169 Cal.App.4th 901 (2008)
REBECCA LICEAGA, Plaintiff and Appellant,
v.
DEBT RECOVERY SOLUTIONS, LLC, Defendant and Respondent.
No. A120277.
Court of Appeals of California, First District, Division One.
December 29, 2008.
*904 Trueblood Law Firm and Alexander B. Trueblood for Plaintiff and Appellant.
Ellis, Coleman, Poirier, La Voie & Steinheimer, Mark E. Ellis, June Dittus Coleman and Wendy D. Vierra for Defendant and Respondent.

OPINION
FLINN, J.[*] 
Plaintiff and appellant Rebecca Liceaga, apparently the victim of identity theft, filed a complaint against Debt Recovery Solutions, LLC, a collection agency, for damages that she claims were caused when it furnished to a consumer credit reporting agency information about her which it knew or should have known was inaccurate. The complaint alleged a violation of California's Consumer Credit Reporting Agencies Act, Civil Code section 1785.1 et seq. (CCRAA). The trial court granted defendant's motion for judgment upon the pleadings upon the ground that any private right of action provided by the CCRAA is preempted by the corresponding federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) (FCRA).
In this appeal we are called upon to determine whether the FCRA preempts private rights of action as to "furnishers" of wrongful information and whether, if so, Congress has specifically excepted California actions from preemption. We conclude that private actions under the CCRAA are preempted, without exception, by FCRA. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff apparently was the victim of identity theft. After her car and purse were stolen, her identity was used to obtain a Sprint cell phone account. Although plaintiff had never done any business with Sprint, when the identity thief failed to pay the account, Sprint assigned the debt to defendant, a debt collection agency, which began "dunning" plaintiff. Despite her pleas to the agency that she was a victim of identity theft and had no Sprint account, they appear to have disbelieved her and ultimately reported her "default" to several credit reporting agencies, without advising that the debt was contested, thus harming her credit score and damaging her credit reputation. This action followed.
Defendant filed a motion for judgment on the pleadings based upon the sole ground that the FCRA preempts all private, state law rights of action that *905 are based upon the wrongful acts of a furnisher of credit information. The trial court granted the motion. Plaintiff has timely appealed.

STANDARD OF REVIEW
The standards governing judgments upon the pleadings and appellate review thereof are well established. A motion for judgment on the pleadings has the same function as a general demurrer, but is made after the time for demurrer has expired; the same rules apply. (Cloud v. Northrop Grumman Corp. (1998) 67 Cal.App.4th 995, 999 [79 Cal.Rptr.2d 544].) The motion normally lies only for defects fully disclosed upon the face of the complaint and the facts alleged therein must be taken as true and are to be liberally construed. (Guild Mortgage Co. v. Heller (1987) 193 Cal.App.3d 1505, 1508 [239 Cal.Rptr. 59].)
The proper interpretation of constitutional or statutory provisions is a question of law, as is the application of a statute to undisputed facts. As such, such issues are subject to independent (de novo) review by this court. (Redevelopment Agency v. County of Los Angeles (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10]; Seligsohn v. Day (2004) 121 Cal.App.4th 518, 522 [16 Cal.Rptr.3d 909].) As the trial court determination in any motion for judgment on the pleadings generally involves purely questions of law, an appellate court independently reviews the trial court's order on such a motion. (See Smiley v. Citibank (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690] [involving an issue of federal preemption as to banking laws].)
There is no dispute in this action as to the fact that both CCRAA and FCRA address the prohibition of those who furnish credit information to credit reporting agencies from providing inaccurate credit information about a consumer.

DISCUSSION

A. General Principles of Preemption

(1) Preemption of federal statutory law over state law is based upon the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2), and whether preemption occurs is largely a question of congressional intent. (English v. General Electric Co. (1990) 496 U.S. 72, 79 [110 L.Ed.2d 65, 110 S.Ct. 2270].)
As was stated in Smiley v. Citibank, supra, 11 Cal.4th at page 147, there are three "circumstances" in which federal preemption is found:
*906 1. Congress can state explicitly the extent to which it intends its enactment to preempt state law ("express" preemption);
2. State law is preempted, even without explicit language, where it attempts to regulate conduct in a field that Congress intended the federal government to occupy exclusively ("implied" or "field" preemption); or
3. Finally, state law is preempted to the extent that it actually conflicts with federal law ("conflict" preemption).
Irrespective of the type of preemption at issue, it is the task of the courts to ascertain the intent of Congress. (Shaw v. Delta Air Lines, Inc. (1983) 463 U.S. 85, 95 [77 L.Ed.2d 490, 103 S.Ct. 2890].)
(2) The intersection of the supremacy clause with the traditional police powers of the states leads, as plaintiff urges, to a presumption against preemption. As was held in Jones v. Rath Packing Co. (1977) 430 U.S. 519 [51 L.Ed.2d 604, 97 S.Ct. 1305], where a field has been traditionally occupied by the states, "`we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" (Id. at p. 525.)
The "clear and manifest" test applies to all types of preemption, as the purposes of Congress may be evidenced in several ways. "The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it. [Citations.] Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. [Citation.] Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. [Citations.] Or the state policy may produce a result inconsistent with the objective of the federal statute. [Citation.] It is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the States undisturbed except as the state and federal regulations collide. [Citations.]" (Rice v. Santa Fe Elevator Corp. (1947) 331 U.S. 218, 230-231 [91 L.Ed. 1447, 67 S.Ct. 1146].)

B. The Fair Credit Reporting Act

In adopting the FCRA in 1968, the Congress made clear its findings and purpose by enacting its first section (15 U.S.C.S. § 1681):
"Congressional findings and statement of purpose[:] [¶] (a) Accuracy and fairness of credit reporting. The Congress makes the following findings: *907 [¶] . . . [¶] (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. [¶] (b) Reasonable procedures. It is the purpose of this title [15 USCS §§ 1681 et seq.] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title [15 USCS §§ 1681 et seq.]."
In 1996, Congress enacted the Consumer Credit Reporting Reform Act of 1996 (Pub.L. No. 104-208 (Sept. 30, 1996) 110 Stat. 3009-447, § 2413) (the Reform Act), which made very substantial modifications to the FCRA. Amongst those changes was the inclusion of those who furnish credit information to credit reporting agencies. The primary regulations of the conduct of "furnishers" is found in section 623 of the Reform Act, which added section 1681s-2 to title 15 of the United States Code (section 1681s-2). That section provides in part: "(a) Duty of furnishers of information to provide accurate information [¶] (1) Prohibition [¶] (A) Reporting information with actual knowledge of errors [¶] A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate. [¶] (B) Reporting information after notice and confirmation of errors [¶] A person shall not furnish information relating to a consumer to any consumer reporting agency if[¶] (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and [¶] (ii) the information is, in fact, inaccurate. [¶] . . . [¶] (D) . . . [¶] For purposes of subparagraph (A), the term `reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information."
(3) Section 1681s-2 additionally contains provisions, amongst others, that require updating of information (§ 1681s-2(a)(2)), require the furnisher who learns that the consumer disputes information to advise the reporting agency of the dispute (§ 1681s-2(a)(3)), and require written notice to the consumer of any "negative" information provided to a reporting agency (§ 1681s-2(a)(7)). Significantly, the section addresses identity theft-related information, providing that if the furnisher receives an identity theft report from the consumer it may not submit credit information to a reporting agency unless the furnisher "knows or is informed by the consumer" that the information is correct (§ 1681s-2(a)(6)(B)). It also contains specific provisions regarding the right of the consumer to require the furnisher whose debt claim is disputed to conduct an investigation (§ 1681s-2(a)(8)(E)(i)).

*908 C. Preemption Specifically Addressed

Congress enacted an entire section of the Reform Act addressed to preemption. Title 15 United States Code section 168lt, entitled "Relation to State Laws," provides: "(a) In general [¶] Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. [¶] (b) General exceptions [¶] No requirement or prohibition may be imposed under the laws of any State [¶] (1) with respect to any subject matter regulated under[¶] . . . [¶] (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply[¶] (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or [¶] (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996) . . . ."

D. The California Exemption

(4) Plaintiff points out in her briefing that "[i]t is a well established maxim of statutory interpretation that statutes should be interpreted so as to give effect to every provision, and should not be interpreted in a manner that renders any part superfluous, void or insignificant." This rule is established both by federal law as to statutory interpretation (Hoffman v. Connecticut Income Maint. Dept. (1989) 492 U.S. 96, 103 [106 L.Ed.2d 76, 109 S.Ct. 2818]; United States v. Menasche (1955) 348 U.S. 528, 538-539 [99 L.Ed. 615, 75 S.Ct. 513]), as well as California law (Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; Weber v. County of Santa Barbara (1940) 15 Cal.2d 82, 85-86 [98 P.2d 492]).
(5) It is for this reason that we conclude that the exemption as to the CCRAA must be limited to the first subdivision, (a), of Civil Code section 1785.25. We can find nothing in the writing of section 1681t of the Reform Act or its legislative history that shows that the inclusion in the legislation of subdivision (a) of Civil Code section 1785.25 was the result of error. Had Congress intended the entire CCRAA to be exempt, it would have certainly omitted the reference to subdivision (a), or, in the least, listed some if not all of the other subdivisions as being a part of the exemption.
Further evidence that the exception was intended by Congress to be limited is the fact that it treated the Massachusetts exception in the very same *909 manner. Section 54A of chapter 93 of the Massachusetts Annotated Laws includes some seven subsections, (a) thorough (g), which include a provision as to liability of the wrongdoer. (Mass. Ann. Laws, ch. 93, § 54A.) As with the California exemption, Congress chose to only exempt the first subdivision of section 54A from its preemption rule. In all, section 1681t of the Reform Act exempted some nine different state laws for various purposes. It is not reasonable to conclude that, in so doing, Congress either carelessly included two subdivisions or inadvertently omitted the inclusion of other subdivisions.
(6) A further basic rule of statutory interpretation is that every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect. (Stafford v. Realty Bond Service Corp. (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) Subdivision (a) of section 1681t of the Reform Act unequivocally provides that any state law that is not consistent with the FCRA is preempted. Since the FCRA has certain preconditions to proceeding with an action against a furnisher of credit information, and the California statute does not, a clear inconsistency would exist. Other inconsistencies would exist in private actions, such as the failure of California to allow a "safe harbor" for financial institutions reasonably believing that privacy laws prohibit contacting the consumer (§ 1681s-2(a)(7)(F)) and the absence in California's statute of an exception from investigation obligations if the reporter "reasonably determines that the dispute is frivolous," which includes failure of the consumer to provide sufficient information. (§ 1681s-2(a)(8)(F).)
We are not alone in our determination that the California exception is limited and does not allow a private right of action. Three reported decisions of the United States District Court, two from the Northern District of California, reach the same conclusion. (Lin v. Universal Card Services Corp. (N.D.Cal. 2002) 238 F.Supp.2d 1147, 1152 (Lin); Gorman v. Wolpoff & Abramson, LLP (N.D.Cal. 2005) 370 F.Supp.2d 1005, 1010-1011; Roybal v. Equifax (E.D.Cal. 2005) 405 F.Supp.2d 1177, 1181, fn. 5.) Likewise, the United States District Court for Massachusetts has come to an identical conclusion as to the Massachusetts exception. (Leet v. Cellco Partnership (D.Mass. 2007) 480 F.Supp.2d 422, 430.) We find no contrary viewpoint.
In opposition to this analysis, plaintiff urges that absent the right of a private action, the exception granted to California is meaningless. Not so. When the exception was enacted, CCRAA created a far wider liability for furnishers than FCRA. Specifically, in California a furnisher was not to furnish information if it "knows or should know the information is incomplete or inaccurate." (Civ. Code, § 1785.25, subd. (a).) FCRA, however, only barred reporting information that the furnisher "knows or consciously avoids *910 knowing" to be inaccurate.[1] California's stricter standard can, due to the exception provided, be enforced by its "chief law enforcement officer" or "an official or agency designated" by the state. (15 U.S.C.S. § 1681s(c).)
Furthermore, it is noteworthy that Congress has not chosen to dispute this viewpoint. In 2003, one year after the United States District Court rendered its reported decision in Lin, supra, 238 F.Supp.2d 1147, Congress made substantial modifications to FCRA.[2] Had it felt Lin to be wrongly decided and intended California to maintain the right to bring private consumer actions, a simple amendment would have so provided.

E. Private Action Preemption

Plaintiff further urges, irrespective of the breadth of the exception, that we should interpret the phrase "no requirement or prohibition may be imposed" as not including any bar to bringing a private state court action against furnishers of information to consumer reporting agencies. In other words, plaintiff would contend that any consumer in any state could bring a private state law action (provided that the statute upon which it was based was not itself expressly preempted).
(7) In concluding that all state law actions have been preempted, the court in Roybal v. Equifax, supra, 405 F.Supp.2d 1177, 1181, stated: "On its face, the FCRA precludes all state statutory or common law causes of action that would impose any `requirement or prohibition' on the furnishers of credit information. Because Plaintiffs' State Claims are based on alleged injury arising purely from the reporting of credit information by a furnisher of credit, they are completely preempted. Several courts that have analyzed this preemption clause concur. [Citations.]" (Fn. omitted.)
We concur with this analysis. It is consistent with the intent of Congress for nationwide uniformity and the avoidance of companies having to comply with a patchwork of state laws. (See 140 Cong. Rec. H9810 (1994), HR9811 (1994), HR9815 (1994), cited in Kodrick v. Ferguson (N.D.Ill. 1999) 54 F.Supp.2d 788, 794.)

CONCLUSION
(8) The trial court correctly concluded that Congress has preempted state court private actions against furnishers of inaccurate credit information to *911 credit reporting agencies and that no exclusion for California actions exists. The judgment upon the pleadings is affirmed.
Marchiano, P. J., and Margulies, J., concurred.
NOTES
[*] Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] In 2003 Congress modified the language to read "knows or has reasonable cause to believe." However, it still defines "reasonable cause to believe" as "having specific knowledge, other than solely allegations by the consumer." (§ 1681s-2(a)(1)(D).)
[2] Amongst other things Congress nullified the eight-year sunset provision as to state preemption, thus making preemption permanent. (Fair and Accurate Credit Transactions Act of 2003 (Pub.L.No. 108-159 (Dec. 4, 2003) 117 Stat. 1952).)