[Nos. B198217, B202787. Second Dist., Div. Seven. Jan. 26, 2009.]

CYRUS M. SANAI, Plaintiff and Appellant, v.
HARVEY A. SALTZ et al., Defendants and Respondents.

748

COUNSEL

Cyrus Sanai, in pro. per., for Plaintiff and Appellant.

Jacobson Russell Saltz & Fingerman, Michael J. Saltz, Sunny S. Nassim and Keri R. Montrose for Defendants and Respondents.

OPINION

**PERLUSS, P. J.**—Cyrus M. Sanai appeals from the judgment entered after the trial court granted motions for judgment on the pleadings filed by Harvey A. Saltz, the former president of The U.D. Registry, Inc. (UDR), a company acquired during the pendency of these proceedings by First Advantage Corporation, and by First Advantage Corporation, as successor in interest to UDR, terminating Mr. Sanai's action for violations of the federal Fair Credit Reporting Act (FCRA; 15 U.S.C. § 1681 et seq.) and the California Consumer Credit Reporting Agencies Act and related state common law claims based on UDR's negative reports about Mr. Sanai's credit following a dispute between Mr. Sanai and his landlord over the amount of rent due for an apartment Mr. Sanai had leased in Newport Beach. Mr. Sanai also appeals from several trial court orders relating to a stay of discovery, denial of leave to amend his complaint and awards of attorney fees and costs. We reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

We described at length the largely undisputed factual background and the procedural history of the first five years of this litigation in our nonpublished decision in *Sanai v. Saltz* (June 28, 2005, B174924, B170618) [nonpub. opn.], from which we now liberally borrow.

### 1. *The Rent Dispute and the Negative Credit Report*

Mr. Sanai rented an apartment in a Newport Beach apartment complex known as Promontory Point from August 26, 1997 through January 1999. After the expiration of the original, six-month lease, Mr. Sanai continued to occupy the apartment on a month-to-month basis at a rent of $2,165. In September 1998 Mr. Sanai received a letter dated August 31, 1998 from a representative of the owner of the apartment complex stating a new monthly rent of $1,435 was being established for his apartment and offering him "the option to renew [for] a minimum of a 6-month up to a 12-month lease, at the

monthly rent of $1,410 effective October 1, 1998." A second copy of this letter was taped to Mr. Sanai's door a few days after he had received the original by mail. Mr. Sanai responded on October 1, 1998 with a letter of acceptance for a 12-month lease, enclosing a rent check of $1,410 for October 1998.

Within a day of Mr. Sanai's acceptance of the offer set forth in the August 31, 1998 letter, a representative of the owner informed Mr. Sanai the monthly rental amount was a misprint and advised him the offer was rescinded. Mr. Sanai (a transactional lawyer) responded that he had accepted the offer and the contract was binding.[1] Further discussions between Mr. Sanai and representatives of the owner did not resolve the dispute. In December 1998 a three-day notice to quit was posted on Mr. Sanai's door. Mr. Sanai moved out of the Promontory Point apartment complex in January 1999.

From October 1, 1998 through the time he left his Newport Beach apartment, Mr. Sanai paid rent at the rate of $1,410 per month. In February 1999, after Mr. Sanai had moved, a representative of the owner contacted Mr. Sanai and demanded he pay back rent in the amount of $2,781; Mr. Sanai refused. Each party threatened the other with legal action.

The owner of the apartment complex filed no legal action to enforce its claim for unpaid rent against Mr. Sanai and apparently did not assign the debt to a collection agency. However, it did retain UDR and Mr. Saltz in April 1999 to inform consumer credit reporting agencies of the claim for unpaid rent against Mr. Sanai.

In January 2000 Mr. Sanai applied for and was denied a low-interest credit card from American Express due to information from a credit reporting agency that a debt had been sent to collection. Citibank subsequently declined Mr. Sanai's request to increase his credit-line limit for the same reason. Mr. Sanai obtained a copy of his credit report, which listed an item from UDR stating a collection account was past due for unpaid rent at Promontory Point. Mr. Sanai then requested that UDR and Mr. Saltz insert in its reports additional information about Mr. Sanai's dispute with the owner of Promontory Point pursuant to Civil Code section 1785.16. Mr. Sanai has subsequently alleged UDR did not include in its reports sent to third parties the text he had requested.

---

[1] In papers filed in support of his motion for a preliminary injunction, Mr. Sanai acknowledged that he initially believed the August 31, 1998 letter contained a typographical error, but declared that, after he received the second letter taped to his apartment door and considered news reports regarding the worldwide financial crisis that was then occurring, he concluded the rental rate stated in the letters was correct and the apartment owners were seeking to retain their better tenants by unilaterally offering to lower the rent.

## 2. *Mr. Sanai's Complaint and UDR's Special Motion to Strike*

In September 2000 Mr. Sanai filed a complaint against UDR and Mr. Saltz alleging causes of action for slander, libel, intentional and negligent interference with prospective economic advantage, intentional and negligent infliction of emotional distress, violations of the Consumer Credit Reporting Agencies Act (Civ. Code, § 1785.1 et seq.) and violation of the FCRA (15 U.S.C. § 1681s-2). The complaint sought in excess of $5 million in damages.

After answering the complaint, UDR filed a special motion to strike under Code of Civil Procedure section 425.16, asserting Mr. Sanai's lawsuit was brought in retaliation for UDR's exercise of its constitutional right to petition or engage in speech related to a matter in litigation. UDR argued that, because Mr. Sanai's debt was detailed in the three-day notice to pay rent or quit that had been served on him as a prerequisite to eviction proceedings, its actions in reporting that alleged debt to the major credit bureaus was speech made in connection with an issue under consideration or review by a judicial body within the meaning of Code of Civil Procedure section 425.16, subdivision (e)(2). On December 5, 2000 the trial court denied the motion, concluding UDR had failed to make the required threshold showing that the challenged causes of action arose from protected activity within the meaning of section 425.16, subdivision (e).[2] At the same time the trial court denied Mr. Sanai's motion for preliminary injunction, which sought to enjoin UDR from threatening to make or making false statements about him to consumer credit reporting agencies, finding Mr. Sanai had not demonstrated he was likely to prevail on the merits of his lawsuit.

UDR and Mr. Saltz appealed the trial court's order denying the special motion to strike, filing notices of appeal on January 16, 2001 (Code Civ. Proc., §§ 425.16, subd. (j), 904.1, subd. (a)(13)); Mr. Sanai cross-appealed from the trial court's denial of his motion for a preliminary injunction (Code Civ. Proc., § 904.1, subd. (a)(6)). On February 2, 2001, two months after the trial court's ruling denying its special motion to strike, UDR also filed a petition for writ of mandate to vacate the trial court's order and requested this court immediately stay all trial court proceedings, arguing its right to appeal the trial court's order was not an adequate remedy. Mr. Sanai opposed the writ petition, noting UDR had exercised its right to appeal from the trial court's denial of the special motion to strike and asserting that none of the public interest considerations the Legislature sought to protect through Code of Civil Procedure section 425.16's expedited procedures was implicated by this case.

---

[2] Although the trial court held UDR had failed to make the required showing that the challenged causes of action arose from protected activity, the court also expressed the view that Mr. Sanai had not demonstrated a probability of prevailing on his claims. (See Code Civ. Proc., § 425.16, subd. (b)(1).)

We summarily denied the petition for writ of mandate and request for stay of proceedings on February 9, 2001. (*U.D. Registry, Inc. v. Superior Court* (Feb. 9, 2001, B147603) [nonpub. opn.], review den. Apr. 25, 2001, S095491.) UDR did not seek a stay of the trial court proceedings by petition for a writ of supersedeas ancillary to its appeal, either before or after our summary denial of its petition for writ of mandate. (See *Reed v. Superior Court* (2001) 92 Cal.App.4th 448, 455 [111 Cal.Rptr.2d 842].)[3]

In an opinion filed March 21, 2002 we affirmed the trial court's denial of UDR's special motion to strike, holding that "for the official proceeding in [Code of Civil Procedure] section 425.16, subdivision (e), clauses (1) and (2), to be 'equated' with a public issue, there must be an actual official proceeding to which the conduct at issue can be connected. If there was no actual official proceeding, there was no public issue to which the conduct can be connected, and the conduct should not fall within the protection of section 425.16, subdivision (e), clauses (1) and (2)." (*Sanai v. U.D. Registry, Inc.* (Mar. 21, 2002, B147392) [nonpub. opn.].) Mr. Sanai's cross-appeal from the denial of his motion for a preliminary injunction was dismissed as moot. (*Ibid.*) The remittitur issued May 24, 2002.

### 3. *Further Proceedings in the Trial Court*

While the appeal from the denial of UDR's special motion to strike was pending in this court from January 16, 2001 to May 24, 2002, the litigation proceeded in the trial court, which issued a number of orders, at least at the outset without any formal objection by either party, determining pleading issues and discovery disputes (including orders for sanctions) and ultimately resolving against Mr. Sanai all of the substantive issues raised by his lawsuit.

Initially, the trial court held Mr. Sanai's landlord was a necessary and indispensable party to the action. As a result, Mr. Sanai filed a first amended complaint and thereafter a second amended complaint adding the owners of the apartment Mr. Sanai had leased (Irvine Apartment Communities, L.P., Irvine Apartment Communities, LLC, and The Irvine Company; collectively Irvine Entities) as defendants and asserting a cause of action against Irvine Apartment Communities, L.P., and Irvine Apartment Communities, LLC, for breach of a written lease agreement (the purported agreement to lease the

---

[3] Although UDR did not file a petition for writ of supersedeas to stay proceedings in the trial court pending resolution of its appeal from denial of the special motion to strike, on January 4, 2002, 11 months after cross-appealing from the trial court's denial of his motion for a preliminary injunction and after both the appeal and cross-appeal had been fully briefed, Mr. Sanai filed his own petition for writ of supersedeas and request for immediate temporary stay, arguing that ongoing proceedings in the trial court could moot the issues raised by his cross-appeal. That petition was summarily denied on January 17, 2002.

apartment for 12 months at a monthly rental of $1,410 beginning Oct. 1, 1998).[4] UDR, as assignee of the Irvine Entities, then filed a cross-complaint to collect the disputed unpaid rent.

On October 18, 2001 the trial court sustained UDR's demurrer to the first seven causes of action in the second amended complaint without leave to amend. The court ruled that the second amended complaint did not allege UDR had wrongfully reported a false debt; indeed, according to Mr. Sanai's allegations, UDR had fully complied with Civil Code section 1785.25, subdivision (c), which requires that, if a debt is subject to a continuing dispute, any information about that debt submitted to a credit reporting agency must include a notice that the information is disputed by the consumer. Judgment on the pleadings in favor of Mr. Saltz and the Irvine Entities on those same seven causes of action was granted by the trial court on December 21, 2001 based on the court's earlier ruling on UDR's demurrer to the second amended complaint. A final judgment of dismissal was thereafter entered as to The Irvine Company and Mr. Saltz on March 8, 2002, shortly before we filed our opinion affirming the trial court's denial of UDR's special motion to strike.

The eighth cause of action in the second amended complaint, the only remaining claim against UDR, was resolved against Mr. Sanai on February 13, 2002 when the trial court granted UDR's motion for summary adjudication, concluding UDR had not published Mr. Sanai's consumer credit report during the time periods alleged in the second amended complaint, an element of the claim for violation of Civil Code section 1785.16. On March 26, 2002 the trial court granted the motion for judgment on the pleadings filed by Irvine Apartment Communities, L.P., and Irvine Apartment Communities, LLC, on the last claim in Mr. Sanai's lawsuit, the ninth cause of action for breach of contract. The trial court ruled Mr. Sanai's attempt to accept the offer for a one-year lease at a $1,410 monthly rental was ineffective because the written offer (even assuming no mistake in the price term) required acceptance no later than September 30, 1998, while Mr. Sanai's letter of acceptance was dated October 1, 1998. The trial court entered a final order of dismissal as to Irvine Apartment Communities, L.P., and Irvine Apartment

---

[4] Mr. Sanai's second amended complaint alleged nine causes of action for slander, libel, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of Civil Code section 1785.1 et seq. (reports made *to* a consumer credit reporting agency), violation of Civil Code section 1785.16 (reports made *by* a consumer credit reporting agency) and breach of written contract. The first seven causes of action named UDR, Mr. Saltz and the Irvine Entities as defendants; only UDR was named as a defendant in the eighth cause of action; Irvine Apartment Communities, L.P., and Irvine Apartment Communities, LLC, were the only defendants named in the ninth cause of action for breach of written contract.

Communities, LLC, on April 2, 2002. Mr. Sanai served a combined written notice of entry of final judgment and final orders of dismissal as to all the Irvine Entities and Mr. Saltz on April 13, 2002.

After all of the causes of action in Mr. Sanai's second amended complaint had been dismissed and a trial date set for UDR's cross-complaint to collect unpaid rent, Mr. Sanai made a statutory tender of the full amount sought by UDR (whether this offer was prompted by the trial court's statement it would entertain a motion for terminating sanctions as a result of Mr. Sanai's failure to comply with discovery orders or was independently prompted by tactical considerations is disputed by the parties). UDR accepted the offer and dismissed its cross-complaint on May 17, 2002—one week *prior* to issuance of the remittitur in *Sanai v. U.D. Registry, Inc., supra,* B147392. A final judgment was entered in the case on September 17, 2002.

### 4. *Mr. Sanai's Postjudgment Motion to Set Aside Void Orders and Our Decision Directing the Trial Court to Vacate All Orders Entered After January 16, 2001*

Following entry of the final judgment, UDR and the Irvine Entities filed both a joint memorandum of costs and a consolidated motion for attorney fees on November 25, 2002. Mr. Sanai moved to strike the costs memorandum as to all parties as untimely; he opposed the attorney fee motion on the merits and also argued as to the Irvine Entities the motion was untimely. After hearing argument the trial court granted UDR and the Irvine Entities' request for leave to file the costs memorandum late and awarded $7,248.60 in costs. The court denied the request for attorney fees under the attorney fee provision in the lease agreement, but found UDR was entitled to attorney fees under Civil Code section 1785.31, subdivision (e), which authorizes the award of fees to a limited class of successful defendants in actions under the Consumer Credit Reporting Agencies Act (actions against "debt collectors" related to the collection of a debt) if the lawsuit was not brought in good faith. The court awarded UDR $136,034 in fees, 25 percent of the total fees sought by all defendants in their consolidated attorney fee motion.

While appealing from those cost and fee orders, Mr. Sanai also moved in the trial court, pursuant to Code of Civil Procedure section 473, subdivision (d), to set aside void orders and judgment, asserting the trial court lacked jurisdiction to make any orders denying him relief or granting relief to defendants during the pendency of the appeal from the denial of UDR's special motion to strike. The trial court denied the motion, and Mr. Sanai appealed from that order as well.

In *Sanai v. Saltz, supra,* B174924, B170618, decided June 28, 2005 on rehearing following the Supreme Court's decision in *Varian Medical Systems,*

*Inc. v. Delfino* (2005) 35 Cal.4th 180 [25 Cal.Rptr.3d 298, 106 P.3d 958] (*Varian*), we reversed the trial court's order denying Mr. Sanai's motion to set aside void judgment and orders, vacated the judgment entered against Mr. Sanai and reversed all postjudgment orders awarding and denying costs and attorney fees. As we explained, in *Varian* the Supreme Court held, by virtue of Code of Civil Procedure section 916, the perfecting of an appeal from the denial of a special motion to strike pursuant to Code of Civil Procedure section 425.16 automatically stays all further trial court proceedings on the merits as to those causes of action affected by the motion (*Varian*, at p. 191) and also held any subsequent trial court proceedings on matters " 'embraced' in or 'affected' by" the appeal are void, not merely voidable: "[S]ection 916, as a matter of logic and policy, divests the trial court of jurisdiction over the subject matter on appeal—i.e., jurisdiction in the fundamental sense." (*Id.* at p. 198.)

We remanded the matter to the trial court with directions to vacate all orders entered after January 16, 2001, the date on which UDR and Mr. Saltz filed notices of appeal from the denial of UDR's special motion to strike Mr. Sanai's complaint, and to conduct further proceedings based on the state of the pleadings on January 16, 2001. In addition, to return the parties so far as practicable to the positions they occupied on January 16, 2001, we directed the trial court to consider Mr. Sanai's request for restitution—initially made to us in connection with his appeals from the postjudgment orders—and to order reimbursements to the extent appropriate. Finally, we awarded Mr. Sanai his costs on appeal.[5]

### 5. *Postremand Proceedings in the Trial Court*

#### a. *Mr. Sanai's pursuit of his costs on appeal*

On September 22, 2005 Mr. Sanai filed a memorandum of costs on appeal (apparently served by mail the previous day), seeking $4,922.95 in costs jointly and severally from Mr. Saltz, First Advantage Corporation, which had been substituted for UDR as a party in the proceedings during the appeal, and the Irvine Entities. Defendants' motion to tax costs, filed October 12, 2005, was ruled untimely (one day late). No motion for relief was filed, and on March 28, 2006 the trial court signed an order submitted by Mr. Sanai instructing the clerk to prepare a judgment in the amount of $4,922.95, plus interest from September 22, 2005, in favor of Mr. Sanai. The order also recited "Mr. Sanai may enforce such judgment from and after March 8, 2006."

---

[5] In the interests of justice we also ordered all further proceedings to be heard before a trial judge other than the judges whose orders were affected by our decision. (Code Civ. Proc., § 170.1, subd. (c).)

On April 5, 2006 Mr. Sanai obtained an abstract of judgment based on the March 28, 2006 order, which he then had recorded in Los Angeles and Orange Counties. (No actual judgment was signed until May 9, 2006.) On April 12, 2006 Mr. Sanai served on Mr. Saltz, First Advantage Corporation and the Irvine Entities (that is, he served the corporate defendants but not their counsel) a memorandum of costs after judgment pursuant to Code of Civil Procedure section 685.070, seeking recovery of the costs incurred preparing and recording the abstracts of judgment ($52), other cost items totaling just under $700 and $137,800 in attorney fees.[6] The memorandum of costs after judgment was filed April 17, 2006. The clerk's judgment dated May 9, 2006 includes a stamp, apparently dated May 8, 2006, indicating "costs after judgment in the amount of [handwritten insert '$138,547.00'] claimed by [handwritten insert 'Plaintiff']."

Michael Saltz, counsel for First Advantage Corporation, gave Mr. Sanai telephonic notice of his intention to apply to the court ex parte for an order shortening time to move to strike the memorandum of costs after judgment. The next day, May 11, 2006, Michael Saltz and Mr. Sanai appeared before the court, and Michael Saltz moved to strike the memorandum of costs. According to Mr. Sanai, he objected that he had only been given notice of a request to shorten time, not that a substantive motion would be presented to the court. The trial court granted the motion to strike, but subsequently vacated that order after Mr. Sanai presented evidence confirming Michael Saltz had not given proper notice of the ex parte hearing, stating only that he would be seeking an order to shorten time. A minute order dated May 12, 2006 recites, "The [May] 11, 2006 Order striking the memorandum of costs and the 5/8/06 judgment is stricken. [¶] Counsel for defendant shall bring a properly noticed motion to strike the memorandum of costs."

First Advantage Corporation and Mr. Saltz (collectively Saltz parties) filed a motion to strike Mr. Sanai's memorandum of costs after judgment on June 26, 2006. Mr. Sanai filed various opposition papers. The trial court granted the motion on July 31, 2006, concluding Mr. Sanai's service of his memorandum of costs after judgment was faulty as to the various corporate defendants (although not as to Mr. Saltz) because he had failed to identify any individual to receive service at any of the corporate entities purportedly served. The court expressly found Mr. Sanai thereafter "intentionally altered court documents to show that certain individuals were served on behalf of corporate defendants." The court also ruled the memorandum should have been filed as a noticed motion because the attorney fees sought by Mr. Sanai were not

---

[6] Mr. Sanai subsequently explained his inclusion of an award of attorney fees in the memorandum of costs after judgment by noting this court had directed the trial court in *Sanai v. Saltz, supra,* B174924, B170618, to consider on remand his request for restitution, which had initially been presented to us.

incurred in enforcing a judgment that included an award of attorney fees to the judgment creditor. The court expressly deferred ruling on the merits of any request for attorney fees by Mr. Sanai, reserving decision until the question was presented as part of a properly noticed motion.

Prior to resolution of the dispute regarding Mr. Sanai's memorandum of costs after judgment, counsel for the Saltz parties sent Mr. Sanai a check for the amount of costs requested in the original memorandum of costs and then an additional check for interest claimed on that sum. A new dispute arose between Mr. Sanai and the Saltz parties regarding filing of acknowledgements of satisfaction of judgment, which prompted a series of ex parte applications and court intervention. Ultimately the Saltz parties filed a motion for an order requiring judgment creditor to execute, file and record acknowledgments of satisfaction of judgment in full.[7] The court granted the motion on March 9, 2007, ordered Mr. Sanai to execute acknowledgments of satisfaction of judgment and imposed statutory damages/sanctions of $500 against Mr. Sanai. Following further briefing, on May 23, 2007 the court awarded the Saltz parties attorney fees in the amount of $50,501.25 pursuant to Code of Civil Procedure section 724.080.

 b. *The motions for leave to amend, stay of discovery and judgment on the pleadings*

As discussed, when we reversed the orders before us in *Sanai v. Saltz, supra,* B174924, B170618, on June 28, 2005, we remanded with directions to the trial court to conduct further proceedings based on the state of the pleadings as of January 16, 2001. At that time Mr. Sanai's original complaint, the operative pleading, alleged three statutory causes of action—violations of the FCRA (15 U.S.C. § 1681s-2) (the eighth cause of action) and portions of the state Consumer Credit Reporting Agencies Act (Civ. Code, §§ 1781.16, subd. (f), 1785.25) (the seventh and ninth causes of action)—and six common law tort actions based on UDR's negative reports to a credit bureau concerning Mr. Sanai's credit status relating to the dispute over his rent.

Mr. Sanai filed several motions to amend his complaint (on Oct. 26, 2005, Feb. 14, 2006, Mar. 30, 2006 and May 1, 2006). In general, Mr. Sanai sought

---

[7] Yet another clash erupted over Mr. Sanai's procurement of an abstract of judgment in October 2006 for the full amount reflected in his memorandum of costs after judgment notwithstanding the trial court's July 31, 2006 order striking the memorandum. On March 9, 2007 the court recalled and quashed the abstract of judgment, finding "Plaintiff Cyrus Sanai ('Plaintiff' or 'Sanai') fraudulently obtained from this Court on October 18, 2006 an Abstract of Judgment in the amount of $143,469.96, and wrongfully caused this Abstract of Judgment to be recorded with the Los Angeles County Recorder's Office . . . ."

leave to allege new and/or different facts underlying his claims,[8] to delete four of the common law claims and to replace them with a more general negligence claim, to delete the Consumer Credit Reporting Agencies Act claims as initially pleaded and reallege one such claim in somewhat different form and to add a new cause of action for violating Business and Professions Code section 17200. The motions were denied by the trial court. In denying the second such motion the court explained its reasoning (in language repeated in substantially the same form in subsequent orders), "The contradiction of key harmful facts originally pleaded and admitted by Sanai makes this court suspicious of Plaintiff's proposed amendment and makes it appear to be a sham. [¶] . . . In denying the previous motion for leave to amend, this court admonished Plaintiff that a new motion would not be granted unless Plaintiff presents evidence 'that the earlier pleading is the result of mistake or inadvertence.' [Citations.] Plaintiff failed to present any evidence that the court instructed him to present." Denying the fourth motion the court stated, "Plaintiff's three prior motions to amend his complaint have been denied because the proposed amendments attempted to 'plead around' defects in the original complaint, and were thus sham pleadings. His latest motion is not different."

On April 27, 2006 the Saltz parties moved for judgment on the pleadings, directed to the original complaint, contending Mr. Sanai's federal claim should be dismissed because the statute at issue, 15 United States Code section 1681s-2, does not provide for a private cause of action; his claim for violation of Civil Code section 1785.25 (section 1785.25) is preempted by federal law; and his state tort causes of action are similarly preempted by federal law. The Saltz parties also argued Mr. Sanai's claims were barred, as a matter of law, by the common interest privilege and asserted his various pleadings and declarations in the trial court established as a matter of law that none of the common law claims had merit.

Prior to filing its motion for judgment on the pleadings, confronting outstanding discovery demands, which it had not answered (and asserted it had never received), and a motion to compel responses, First Advantage Corporation moved for a protective order to stay all discovery pending the court's determination of the "jurisdictional" issues to be raised by its dispositive motion. Mr. Sanai opposed the motion, arguing First Advantage Corporation had waived its objections to his discovery demands by failing to

---

[8] In particular, responding to the argument his October 1, 1998 acceptance of the offer for a one-year lease at $1,410 per month was ineffective because it was one day late, Mr. Sanai's proposed amendments variously alleged he had accepted the offer "by a letter and check that were timely delivered"; "by a letter delivered prior to October 1, 1998"; by a letter dated October 1, 1998 (as originally alleged) that was delivered "on or before October 1, 1998"; and after being informed by the apartment complex's staff "the offer could be accepted on or before October 1, 1998."

respond in a timely fashion and asserting the motion itself was untimely because not filed "promptly" after the discovery had been served. Noting the motion was filed within the extended time agreed to by the parties for discovery responses, the court found the motion "was both a timely and promptly filed response." The court granted the motion and ordered all discovery stayed "pending resolution of potential termination motions." The court ordered all such motions be brought within the next 90 days "or the stay will be lifted."

c. *The court's order granting judgment on the pleadings*

Following extensive briefing and several hearings, the trial court granted the Saltz parties' motion for judgment on the pleadings. As to Mr. Sanai's federal claim (the eighth cause of action), the court held there was no private right of action for violating 15 United States Code section 1681s-2(a)—a point Mr. Sanai conceded—and Mr. Sanai had failed to state a cause of action under 15 United States Code section 1681s-2(b). The court gave Mr. Sanai leave to amend the subdivision 2(b) claim, but required, as a condition to allowing the amendment, that Mr. Sanai produce "admissible evidence" to support any new factual allegations in his pleading. When Mr. Sanai failed to present such evidence, the court granted the motion as to the federal claim without leave to amend.

As to his state statutory claim (the seventh cause of action), notwithstanding language in the FCRA expressly excepting from preemption section 1785.25, subdivision (a), the trial court concluded allowing a private cause of action for the conduct alleged by Mr. Sanai would be inconsistent with the federal scheme and ruled the claim preempted by federal law. The court similarly found Mr. Sanai's common law causes of action preempted.[9]

d. *The postjudgment award of costs and attorney fees*

After the trial court's order granting the Saltz parties' motions for judgment on the pleadings, Mr. Sanai filed a request for entry of dismissal with prejudice to create an immediately appealable order. Following entry of judgment the Saltz parties moved for attorney fees as the prevailing parties

---

[9] Although unnecessary for its decision, for the sake of completeness the trial court considered and rejected the Saltz parties' argument that Mr. Sanai's six common law causes of action failed because his pleadings and other filings conclusively established he owed the debt described in the challenged credit report. As the court explained, the gravamen of Mr. Sanai's complaint is that UDR falsely reported rent due the Irvine Entities was actively "in collection," not that a debt was owed. Nothing in the record conclusively established the truth of that assertion.

pursuant to 15 United States Code sections 1681n(c)[10] and 1681o(b).[11] Mr. Sanai opposed the motion, arguing the provisions cited by the Saltz parties were inapplicable to his lawsuit or, alternatively, at most authorized recovery of attorney fees only for that small portion of the litigation involving his federal claim.

The court rejected those arguments and awarded $1,003,426.25 in attorney fees. In its order the court explained, "This court specifically finds that this entire action has been prosecuted and maintained in bad faith and for the purpose of harassment. [¶] . . . [¶] Further, Plaintiff's prosecution of this matter has been malicious, as evidenced by, among other things, the altering of documents presented to the Clerk's office and the recording of illegal judgment liens with malice, and then refusing to remove them despite being ordered by the Court to do so. [¶] Several other Courts have bluntly noted and condemned Plaintiff's litigation tactics. It is now this Court's turn. [¶] . . . [¶] This Court specifically finds that all unsuccessful pleadings, motions, and papers filed by Plaintiff in this lawsuit were done so in connection with an action under 15 USC Section 1681, and further that these pleadings, motions and papers were filed in bad faith and with the purpose of harassment."

## CONTENTIONS

In his appeal in B198217 Mr. Sanai contends the trial court erred in granting the motions for judgment on the pleadings, denying him permission to amend his complaint, staying discovery pending decision of the Saltz parties' dispositive motions and striking his memorandum of costs after judgment in connection with our award of costs relating to the appeal in *Sanai v. Saltz, supra*, B174924, B170618. In B202787 Mr. Sanai contends the court erred in awarding attorney fees to the Saltz parties pursuant to Code of Civil Procedure section 724.080 in connection with the appellate costs proceedings and awarding them costs and attorney fees as the prevailing parties in the underlying lawsuit pursuant to 15 United States Code sections 1681n(c) and 1681o(b).

---

[10] 15 United States Code section 1681n(c), concerning civil liability for willful noncompliance under the FCRA, provides, "Attorney's fees. [¶] Upon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper."

[11] 15 United States Code section 1681o(b), concerning civil liability for negligent noncompliance under the FCRA, provides, "Attorney's fees. [¶] On a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees reasonable in relation to the work expended in responding to the pleading, motion, or other paper."

## DISCUSSION

1. *The Trial Court Erred in Denying Leave to Amend the Eighth Cause of Action for Violation of 15 United States Code Section 1681s-2(b)*

 a. *As currently pleaded the complaint fails to state a cause of action for violation of 15 United States Code section 1681s-2(b)*

As originally pleaded in September 2000, Mr. Sanai's eighth cause of action alleged he sent UDR a letter dated February 28, 2000 notifying it he owed no money for rent at Promontory Point and no collection activities had been initiated against him. Nonetheless, UDR and Mr. Saltz informed Experian (formerly TRW), a national consumer credit reporting agency, that Mr. Sanai owed Promontory Point $3,060 in violation of the FCRA, 15 United States Code section 1681s-2.

In a proposed first amended, supplemental verified complaint submitted on September 21, 2006 as an exhibit to his opposition to the pending motions for judgment on the pleadings, Mr. Sanai alleged, as a violation of 15 United States Code sections 1681g and 1681s-2(b), after he had informed UDR of the inaccuracies of the information it had reported to the consumer credit reporting agencies, UDR, as well as Mr. Saltz and First Advantage Corporation, failed to properly investigate the complaint to ensure all reported information was complete, accurate and not misleading, and failed to correct information that was not complete, accurate and not misleading. "In particular and without limiting the generality of the foregoing, Saltz, UDR and FAC [First Advantage Corporation] failed to correct the information they had reported to inform the consumer credit reporting agencies that Promontory Point had not as of '9-99' conducted any collection activities and had no intention of doing so."

██ The FCRA (15 U.S.C. § 1681 et seq.) was adopted by Congress to ensure accuracy and fairness in credit reporting and to protect the rights of individual consumers. (See 15 U.S.C. § 1681(b); *Jones v. Federated Financial Reserve Corp.* (6th Cir. 1998) 144 F.3d 961, 965; *Pinner v. Schmidt* (5th Cir. 1986) 805 F.2d 1258, 1261.) With respect to furnishers of information to consumer credit reporting agencies, like UDR and First Advantage Corporation, section 623 of the FCRA imposes two general requirements: the duty to

provide accurate information (15 U.S.C. § 1681s-2(a))[12] and the duty to investigate the accuracy of reported information upon receiving notice of a dispute (15 U.S.C. § 1681s-2(b)).[13] To trigger the latter set of duties, however, notice to the furnisher of information must be given pursuant to section 611(a)(2) of the FCRA (15 U.S.C. § 1681i(a)(2)), which requires a consumer credit reporting agency to reinvestigate the current accuracy of information in its files after being notified by the consumer of a dispute and to notify the person who furnished it with the information about the dispute. That is, to activate the duties imposed by section 623(b) of the FCRA, notice of the dispute must come to the furnisher of the information (UDR) from the credit reporting agency (Experian), not directly from the consumer (Mr. Sanai) himself. (*Young v. Equifax Credit Information Services, Inc.* (5th Cir. 2002) 294 F.3d 631, 639–640.) "This means that a furnisher of credit information . . . has no responsibility to investigate a credit dispute until after it

---

[12] 15 United States Code section 1681s-2(a)(1)(B) prohibits furnishing "information relating to a consumer to any consumer reporting agency if [¶] (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and [¶] (ii) the information is, in fact, inaccurate."

15 United States Code section 1681s-2(a)(2) provides, "A person who—[¶] (A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and [¶] (B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, [¶] shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate."

15 United States Code section 1681s-2(a)(3) provides, "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

[13] 15 United States Code section 1681s-2(b) provides, "(1) In general. [¶] After receiving notice pursuant to section 611(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—[¶] (A) conduct an investigation with respect to the disputed information; [¶] (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2); [¶] (C) report the results of the investigation to the consumer reporting agency; [¶] (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and [¶] (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—[¶] (i) modify that item of information; [¶] (ii) delete that item of information; or [¶] (iii) permanently block the reporting of that item of information. [¶] (2) Deadline. [¶] A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) within which the consumer reporting agency is required to complete actions required by that section regarding that information."

receives notice from a consumer reporting agency. Under the statutory language notification from a consumer is not enough." (*Stafford v. Cross Country Bank* (W.D.Ky. 2003) 262 F.Supp.2d 776, 784; accord, *Rollins v. Peoples Gas Light and Coke Co.* (N.D.Ill. 2005) 379 F.Supp.2d 964, 967; *Elmore v. North Fork Bancorporation, Inc.* (S.D.N.Y. 2004) 325 F.Supp.2d 336, 340.)

█ Mr. Sanai's complaint plainly alleges UDR violated 15 United States Code section 1681s-2(a) by reporting inaccurate information concerning his credit status and by failing to correct the inaccuracies when notified by Mr. Sanai. However, enforcement of the duties enumerated in that section of the FCRA is expressly reserved to federal agencies and specified state officials. (15 U.S.C. § 1681s-2(d); see *Nelson v. Chase Manhattan Mortgage Corp.* (9th Cir. 2002) 282 F.3d 1057, 1059.) The trial court so ruled, and Mr. Sanai does contend otherwise.

█ Although violations of section 623(a) of the FCRA may not be privately enforced, a private cause of action for consumers is generally recognized under section 623(b) of the FCRA (15 U.S.C. § 1681s-2(b)) against furnishers of credit information who fail to comply with the requirements of that provision. (See, e.g., *Nelson v. Chase Manhattan Mortgage Corp., supra*, 282 F.3d at pp. 1059–1060; *Nelson v. Equifax Information Services, LLC* (C.D.Cal. 2007) 522 F.Supp.2d 1222, 1229–1230; *Pirouzian v. SLM Corp.* (S.D.Cal. 2005) 396 F.Supp.2d 1124, 1127; *Gordon v. Greenpoint Credit* (S.D.Iowa 2003) 266 F.Supp.2d 1007, 1011–1012; but see *Carney v. Experian Information Solutions, Inc.* (W.D.Tenn. 1999) 57 F.Supp.2d 496, 502 [consumer credit reporting agency, but not consumer, may sue to enforce obligations imposed by 15 U.S.C. § 1681s-2(b)].) In opposition to the Saltz parties' motion for judgment on the pleadings, Mr. Sanai argued he had standing to assert such a claim. The trial court accepted Mr. Sanai's standing, but concluded he had not stated a cause of action because his complaint "plainly reveals that the only notice provided to UDR in connection with that cause of action [for violation of the FCRA] came from Plaintiff himself, not from Experian or any other consumer reporting agency."

Mr. Sanai suggests, since the affected consumer will inevitably be the original source of any inquiry about the accuracy of credit information furnished to the credit reporting agency, notice of the dispute to the furnisher of the credit information from the consumer credit reporting agency ought not be a condition precedent for private enforcement of the duties of investigation imposed by 15 United States Code section 1681s-2(b). Whatever merit Mr. Sanai's argument might have as a matter of policy, the language of the statute, as held, for example, by the Ninth Circuit in *Nelson v. Chase Manhattan Mortgage Corp., supra*, 282 F.3d at pp. 1059–1060, could not be clearer. Absent notice from Experian, UDR had no enforceable duty to reinvestigate the information about Mr. Sanai it had previously provided.

b. *The trial court abused its discretion in imposing overly restrictive requirements when granting conditional leave to amend the complaint*

As an alternative to his argument that notice of his dispute need not have been given by him to Experian and then by Experian to UDR, Mr. Sanai insists he was and is capable of alleging these facts and argues he was entitled to leave to amend his complaint to plead this required element.

i. *The conditional grant of leave to amend*

In its amended ruling granting the motions for judgment on the pleadings, filed December 19, 2006, the court made the following observation with respect to a possible amendment to allege Mr. Sanai gave notice to Experian and Experian gave notice to UDR sufficient to state a private cause of action under 15 United States Code section 1681s-2(b): "First, there has been no shortage of amendments and attempted amendments in this case and none, so far, has come remotely close to alleging facts that might satisfy section 1681s-2(b). Indeed, the proposed amendment, filed with [Mr. Sanai's opposition to] this motion and already rejected by this court, alleges a cause of action for section 1681s-2(b), yet does not allege these facts. The current state of the pleading is quite to the contrary of these facts. Plaintiff alleges that he contacted defendants and they informed Experian, thereby violating . . . section 1681s-2. (See ¶ 65 [of Sept. 2000 complaint].) [¶] However, if Plaintiff can produce admissible evidence that shows, for the purposes of section 1681s-2(b), that he contacted Experian and that Experian contacted defendant, Plaintiffs, will be allowed to amend. . . . This court remains very sensitive to sham pleadings, where factual theories are changed or abandoned to fit tentative rulings."

In a declaration under penalty of perjury filed as part of a supplemental response to the court's December 19, 2006 order, Mr. Sanai stated he made two separate written complaints to Experian challenging the information UDR had provided Experian. "These letters informed Experian that the information provided by [UDR] was false. The response[s] I got back from Experi[a]n in both cases were updated credit reports with no changes made, from which I conclude that [UDR] did not change the information that it reported based on the investigation requests." Mr. Sanai also asserted in his declaration that at the hearing on the motions for judgment on the pleadings Michael Saltz, counsel for UDR and First Advantage Corporation and a former director of UDR, stated Mr. Sanai had made two separate written complaints to Experian *and* that UDR had received two letters from Experian requesting that UDR initiate a reinvestigation. In an accompanying memorandum of points and authorities, Mr. Sanai argued Michael Saltz's in-court

statements were admissible evidence. He also argued the court's stay of all discovery precluded him from producing additional admissible evidence.

In an opposition memorandum the Saltz parties argued earlier filings by Mr. Sanai established he had complained to Experian only on one prior occasion, not two, and then only to contend the debt reported was not his. Experian contacted UDR, which properly investigated the complaint and reported back to Experian the information was correct. Counsel disputed he had admitted at the prior hearing that Experian contacted UDR twice (and attached a copy of the transcript of the Nov. 16, 2006 hearing) and insisted Mr. Sanai's "sworn testimony is not enough, especially in light of his propensity to lie to this Court . . . ." Finally, counsel argued Mr. Sanai should have copies of his correspondence with Experian, so his inability to conduct discovery was immaterial.

In an addendum to its amended ruling on the motions for judgment on the pleadings, filed February 27, 2007, the court concluded Mr. Sanai's showing was insufficient to permit an amendment to his complaint. The court stated Mr. Sanai had offered nothing "by way of documents or transcripts" to support his claim or to give the court reason to disbelieve the Saltz parties' representations concerning the extent of their communications with Experian. "Plaintiff would presumably be in possession of the evidence that might trigger a need to further test Defendants' representations through discovery—a second set of communications between himself and Experian." Although acknowledging the testimony of a single witness is sufficient to prove any fact (referring to the statements under penalty of perjury in Mr. Sanai's declaration), the court noted "at least two problems with this offer. First, if Plaintiff made written complaints to Experian, there would be no need to rely on his oral testimony. Second, . . . given the history of this litigation, this Court is extremely sensitive to the manufacturing of facts and the threat of sham pleading." Accordingly, the court granted the motion for judgment on the pleadings as to the federal claim without leave to amend.

> ii. *Notwithstanding the trial court's past unsatisfactory experiences with Mr. Sanai's efforts to amend his complaint, Mr. Sanai should have been granted leave to amend his FCRA claim*

The allegation of notice sufficient to state a private cause of action under 15 United States Code section 1681s-2(b) has two aspects. First, Mr. Sanai must allege he informed Experian of his dispute. In his sworn declaration in response to the order conditionally granting leave to amend, Mr. Sanai insisted he did so in writing on two separate occasions. Second, he must allege Experian contacted UDR, as required by 15 United States Code

section 1681i(a)(2), and requested UDR reinvestigate the credit information it had provided. Although explaining he had no access to Experian's correspondence with UDR and emphasizing the trial court had stayed discovery, Mr. Sanai asserted he could (and would) make the required allegation based on statements made in court by Michael Saltz, counsel for UDR.

■ If we were to consider Mr. Sanai's proposed amendments and the proffered bases for them in the abstract—that is, without considering the trial court's experience with the parties and the manner in which the litigation has been conducted, which spawned its "sensitiv[ity] to sham pleadings, where factual theories are changed or abandoned to fit tentative rulings"—we would have little doubt leave to amend should have been granted. "[G]reat liberality should be exercised in permitting a plaintiff to amend . . . ." (*Lemoge Electric v. County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638]; accord, *Okun v. Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369].) "If there is any reasonable possibility that the plaintiff can state a good cause of action, it is error to sustain a demurrer without leave to amend." (*Youngman v. Nevada Irrigation Dist.* (1969) 70 Cal.2d 240, 245 [74 Cal.Rptr. 398, 449 P.2d 462]; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] [leave to amend should be granted when the plaintiff has demonstrated a "reasonable possibility" that he or she can amend any of her claims to state viable causes of action].)

■ But this case does have an extensive history, and the trial court has every right to guard against sham pleadings and to prevent abuse of the litigation process. For example, the trial court has discretion to deny leave to amend when the proposed amendment omits or contradicts harmful facts pleaded in a prior pleading unless a showing is made of mistake or other sufficient excuse for changing the facts. Absent such a showing, the proposed pleading may be treated as a sham. (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 [29 Cal.Rptr.2d 669]; *Amid v. Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383, 1390 [261 Cal.Rptr. 240].) "The well-established rule is that a proposed amendment which contradicts allegations in an earlier pleading will not be allowed in the absence of 'very satisfactory evidence' upon which it is 'clearly shown that the earlier pleading is the result of mistake or inadvertence.' " (*American Advertising & Sales Co. v. Mid-Western Transport* (1984) 152 Cal.App.3d 875, 879 [199 Cal.Rptr. 735]; see *Reichert v. General Ins. Co.* (1968) 68 Cal.2d 822, 836 [69 Cal.Rptr. 321, 442 P.2d 377] [" 'Where a verified complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by simply omitting such allegations without explanation.' [Citations.] 'In such a case the original defect infects the subsequent pleading so as to render it vulnerable to a demurrer.' [Citation.] However, we have also made it clear that 'a party should be allowed to correct a pleading by omitting an allegation which, it

appears, was made as the result of mistake or inadvertence.' "].) Ordinarily a court will permit an amendment to cure a mistake or inadvertent allegation, but it "is not required to accept an amended complaint that is not filed in good faith, is frivolous or sham." (*American Advertising & Sales Co.*, at p. 878.)

The trial court appears to have had good reason to be hesitant to accept new factual allegations from Mr. Sanai, at least to the extent they were inconsistent with prior allegations (as, for example, seems to have been the case with respect to allegations regarding the timing of Mr. Sanai's purported acceptance of the offer for a one-year lease at $1,410 per month); but it went too far when it demanded the production of admissible evidence, specifically excluding Mr. Sanai's own testimony, to support the proposed amendment to the complaint while at the same time preventing Mr. Sanai from conducting any discovery.[14] Significantly, none of Mr. Sanai's prior filed or proposed pleadings contained any inconsistent allegations. Paragraph 65 of the original complaint, identified by the trial court at the November 16, 2006 hearing on the motion for judgment on the pleadings as "diametrically opposed to what you're saying now," alleged Mr. Sanai notified UDR of errors in the credit report and UDR nonetheless falsely informed Experian that Mr. Sanai owed Promontory Point in excess of $3,000. That allegation does not contradict Mr. Sanai's subsequent allegation he also notified Experian directly of the errors and Experian, in turn, reported the dispute to UDR and requested reinvestigation.

To be sure, Mr. Sanai did not offer his more refined version of events until the required pleading elements for a private cause of action under 15 United States Code section 1681s-2(b) were articulated by the court.[15] And we are aware, as the Saltz parties argued in the trial court, evidence adduced in connection with the special motion to strike under Code of Civil Procedure section 425.16 and Mr. Sanai's motion for a preliminary injunction suggests Mr. Sanai may be unlikely to prove his claim. But the question before us is not whether Mr. Sanai's evidence will be sufficient to prevail at trial or even to survive summary judgment but whether his allegations of notice are adequate to state a cause of action. (See *Brehm v. 21st Century Ins. Co.* (2008)

[14] It was not unreasonable for the trial court to assume Mr. Sanai, a lawyer, would have retained copies of any correspondence he sent or received; but his failure to do so does not make his testimony about what he did incompetent or otherwise inadmissible. Moreover, there is no reason to expect Mr. Sanai to have obtained copies of correspondence between Experian and UDR without the discovery tools normally available to litigants in our state courts.

[15] Mr. Sanai correctly points out he filed his original complaint in 2000 and the Ninth Circuit's decision in *Nelson v. Chase Manhattan Mortgage Corp., supra*, 282 F.3d at pages 1059 to 1060, the only published federal appellate opinion recognizing a private cause of action under 15 United States Code section 1681s-2(b) against furnishers of credit information, was not filed until 2002.

166 Cal.App.4th 1225, 1240 [83 Cal.Rptr.3d 410] ["Although we may entertain some skepticism as to the nature of the competent and credible proof Brehm will be able to offer in support of these allegations, the issue before us is not whether his evidence will be sufficient but whether his allegations of intentional misconduct and bad faith are."].)[16]

In concluding the trial court erred in imposing unduly restrictive conditions on Mr. Sanai's right to amend his complaint, however, we certainly do not intend to suggest the trial court is without powerful tools to shield other parties, as well as nonparties, from abusive litigation tactics. For example, the trial court could issue orders initially limiting any discovery to the issue of notice and imposing strict controls on the order, timing and scope of that discovery. Then, if appropriate, the court could schedule an early hearing on a motion for summary adjudication regarding the 15 United States Code section 1681s-2(b) claim. In addition, if there is reason to believe the amendments to the complaint are being presented for an improper purpose, sanctions may be available under Code of Civil Procedure section 128.7 (see generally *Day v. Collingwood* (2006) 144 Cal.App.4th 1116 [50 Cal.Rptr.3d 903]; *Banks v. Hathaway* (2002) 97 Cal.App.4th 949 [118 Cal.Rptr.2d 803]), as well as Code of Civil Procedure section 128.5 (see generally *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 562–563 [102 Cal.Rptr.2d 350]). But the trial court is simply without power to demand, as the condition for leave to amend, that a party present admissible evidence sufficient to withstand summary judgment.[17]

2. *The Trial Court Erred in Granting the Motion for Judgment on the Pleadings as to Mr. Sanai's Cause of Action for Violation of Section 1785.25 but Properly Granted the Motion as to the State Common Law Causes of Action*

Section 1785.25, subdivision (a), part of the Consumer Credit Reporting Agencies Act (Civ. Code, § 1785.1 et seq.), provides, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." The seventh cause of action in Mr. Sanai's September 2000 complaint alleged, in part, although UDR and Mr. Saltz were

---

[16] Demanding a plaintiff present evidence an earlier, inconsistent pleading was the result of mistake or inadvertence—a condition commonly imposed by the trial court (see, e.g., *Vallejo Development Co. v. Beck Development Co., supra*, 24 Cal.App.4th at p. 946)—is quite different from the requirement that Mr. Sanai produce admissible evidence sufficient to support his amended claim against the Saltz parties.

[17] Because we reverse the order granting judgment on the pleadings on the FCRA claim and remand to permit Mr. Sanai to amend his federal cause of action and for further proceedings, we necessarily reverse as premature the award of attorney fees to the Saltz parties under 15 United States Code sections 1681n(c) and 1681o(b).

aware Promontory Point (or the Irvine Entities) had not initiated any collection proceedings against Mr. Sanai, UDR nonetheless falsely reported to Experian his purported debt to his former landlord was in collection. Those allegations are sufficient to state a cause of action under section 1785.25, subdivision (a),[18] unless, as the trial court held, federal law preempts this state statutory claim.

### a. *General principles of preemption*

■ The United States Supreme Court has traditionally recognized preemption of state law by federal enactments pursuant to the supremacy clause (U.S. Const., art. VI, cl. 2) in three circumstances: (1) express preemption; (2) implied (or field) preemption; and (3) conflict preemption. (*English v. General Electric Co.* (1990) 496 U.S. 72, 78–79 [110 L.Ed.2d 65, 110 S.Ct. 2270].) " ' "First, Congress can define explicitly the extent to which its enactments pre-empt state law. [Citation.] Pre-emption fundamentally is a question of congressional intent, [citation] and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.[19] [¶] Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of

---

[18] Civil Code section 1785.31 provides, in part, for a private cause of action for actual and punitive damages, as well as injunctive relief, for any consumer aggrieved by a violation of any provision of the Consumer Credit Reporting Agencies Act. (See, e.g., Civ. Code, § 1785.31, subd. (a) ["[a]ny consumer who suffers damages as a result of a violation of this title by any person may bring an action in a court of appropriate jurisdiction against that person to recover the following [remedies] . . ."].)

Section 1785.25, subdivision (g), provides a partial defense to furnishers of credit information, but does not itself create a private cause of action: "A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions."

[19] Express preemption exists when Congress defines the extent to which its enactments will displace state law. (*English v. General Electric Co, supra*, 496 U.S. at p. 78; *Pacific Gas & Elec. v. Energy Resources Comm'n* (1983) 461 U.S. 190, 203–204 [75 L.Ed.2d 752, 103 S.Ct. 1713] ["[i]t is well established that within constitutional limits Congress may pre-empt state authority by so stating in express terms"].) The federal law we consider in this case—the FCRA—has such an express preemption provision, 15 United States Code section 1681t(a), (b). However, "[i]f a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains." (*Altria Group, Inc. v. Good* (2008) 555 U.S. ___, ___ [172 L.Ed.2d 398, 129 S.Ct. 538].)

state laws on the same subject.' [Citation.] ■ Although [the Supreme] Court has not hesitated to draw an inference of field pre-emption where it is supported by the federal statutory and regulatory schemes, it has emphasized: 'Where . . . the field which Congress is said to have pre-empted' includes areas that have 'been traditionally occupied by the States,' congressional intent to supersede state laws must be ' "clear and manifest." ' [Citations.] [¶] Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, [citation] or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " ' " (*Jevne v. Superior Court* (2005) 35 Cal.4th 935, 949–950 [28 Cal.Rptr.3d 685, 111 P.3d 954]; accord, *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1265 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

■ Federal laws may preempt state common law as well as state legislation. (*Riegel v. Medtronic, Inc.* (2008) 552 U.S. 312, ___ [169 L.Ed.2d 892, 128 S.Ct. 999, 1008] (*Medtronic*) ["in the context of this legislation excluding common-law duties from the scope of pre-emption would make little sense. State tort law that requires a manufacturer's catheters to be safer, but hence less effective, than the model the FDA has approved disrupts the federal scheme no less than state regulatory law to the same effect. Indeed, one would think that tort law, applied by juries under a negligence or strict-liability standard, is less deserving of preservation."]; *Cipollone v. Liggett Group, Inc.* (1992) 505 U.S. 504, 521 [120 L.Ed.2d 407, 112 S.Ct. 2608]; see *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1487, fn. 5 [71 Cal.Rptr.3d 714].)

■ Preemption analysis, however, generally begins with a presumption against preemption, that is, "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (*Rice v. Santa Fe Elevator Corp.* (1947) 331 U.S. 218, 230 [91 L.Ed. 1447, 67 S.Ct. 1146]; accord, *Altria Group, Inc. v. Good, supra*, 555 U.S. at p. ___ [172 L.Ed.2d at p. 406].) "This assumption provides assurance that 'the federal-state balance . . .' [citation] will not be disturbed unintentionally by Congress or unnecessarily by the courts." (*Jones v. Rath Packing Co.* (1977) 430 U.S. 519, 525 [51 L.Ed.2d 604, 97 S.Ct. 1305].) When the text of a federal law containing a preemption clause is open to more than one plausible interpretation, courts ordinarily "accept the reading that disfavors pre-emption." (*Bates v. Dow Agrosciences LLC* (2005) 544 U.S. 431, 449 [161 L.Ed.2d 687, 125 S.Ct. 1788]; accord, *Altria Group, Inc.*, at p. ___ [172 L.Ed.2d at p. 406].)

### b. *Preemption under the FCRA*

 The FCRA contains two preemption sections affecting state law claims that apply to persons who furnish information under the FCRA. First, 15 United States Code section 1681t(a) provides only state law claims inconsistent with the express provisions of the FCRA are preempted. "Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." (15 U.S.C. § 1681t(a).) Thus, there is no implied or field preemption: "Congress did not enact the FCRA with the goal of vitiating all state laws, but only those that are inconsistent with the federal law." (*Lin v. Universal Card Services Corp.* (N.D.Cal. 2002) 238 F.Supp.2d 1147, 1151 (*Lin*).)

Notwithstanding this general language preserving state laws that do not conflict with the FCRA, however, in 1996 Congress amended the FCRA to strictly limit the availability of consumer's state remedies against furnishers of credit information. As amended, 15 United States Code section 1681t(b) provides, "No requirement or prohibition may be imposed under the laws of any State—[¶] (1) with respect to any subject matter regulated under—[¶] . . . [¶] (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply—[¶] (i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996);[20] [¶] (ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on the date of enactment (September 30, 1996) . . . ."

### i. *Mr. Sanai's common law claims*

 The United States Supreme Court in *Medtronic, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1008] held, "[a]bsent other indication, reference to a State's 'requirements' includes its common-law duties." There is nothing in the present case to contradict this normal meaning. Accordingly, 15 United States Code section 1681t(b)(1)(F) totally preempts all state common law tort claims against furnishers of credit information arising from conduct regulated by 15 United States Code section 1681s-2, including Mr. Sanai's common law tort claims against UDR and Mr. Saltz. (See *Roybal v. Equifax* (E.D.Cal.

---

[20] The Massachusetts law exempted from preemption, like section 1785.25, subdivision (a), involves the obligations of the furnishers of credit information to provide accurate information to credit reporting agencies.

2005) 405 F.Supp.2d 1177, 1181 [the FCRA precludes all "common law causes of action that would impose any 'requirement or prohibition' on the furnishers of credit information"]; *Hasvold v. First USA Bank, N.A.* (D.Wyo. 2002) 194 F.Supp.2d 1228, 1239 [dismissing as preempted state common law claims for libel, interference with prospective advantage and invasion of privacy; " '[t]he plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting' "]; *Riley v. General Motors Acceptance Corp.* (S.D.Ala. 2002) 226 F.Supp.2d 1316, 1323 [dismissing as preempted state law claims for defamation, invasion of privacy and negligence].)

We acknowledge some federal district courts—in cases decided before *Medtronic, supra*, 552 U.S. 312 [128 S.Ct. 999]—have held the FCRA preempts only claims against credit information furnishers brought under state statutes, not common law, based on language in 15 United States Code section 1681h(e), which limits consumer actions for defamation, invasion of privacy or negligence against consumer reporting agencies relating to information disclosed pursuant to the FCRA "except as to false information furnished with malice or willful intent to injure such consumer." (See, e.g., *Beuster v. Equifax Information Services* (D.Md. 2006) 435 F.Supp.2d 471, 479; *Gorman v. Wolpoff & Abramson, LLP* (N.D.Cal. 2006) 435 F.Supp.2d 1004, 1009–1010, revd. on other grounds (9th Cir. 2009) 552 F.3d 1008.) Unlike 15 United States Code section 1681t, however, which expressly deals with the FCRA's preemption of state law, 15 United States Code section 1681h(e) is not a preemption provision at all. Rather, it is a general grant of protection to furnishers of credit information for certain disclosures mandated under the FCRA. Moreover, section 1681h(e) was part of the FCRA when Congress added the specific preemption language found in section 1681t in 1996. Accordingly, even if there were a conflict between the two sections of the FCRA, the subsequently enacted statutory provision would control. (See *Governing Board v. Mann* (1977) 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1]; *Board of Supervisors v. Superior Court* (1989) 207 Cal.App.3d 552, 559–560 [254 Cal.Rptr. 905].)

ii. *Mr. Sanai's claim under section 1785.25, subdivision (a)*

As discussed, 15 United States Code section 1681t(b)(1)(F)(ii) expressly excepts Civil Code section 1785.25, subdivision (a), from preemption. Indeed, as the district court recognized in *Lin, supra*, 238 F.Supp.2d at page 1151, "[r]etaining section 1785.25(a) is consistent with Congress' stated intention in section 1681t(a)" because both provisions prohibit knowingly providing false or inaccurate information to a consumer credit reporting

agency. On what possible basis, then, could the trial court here find Mr. Sanai's section 1785.25 claim preempted?

Like several other federal district courts in California, the district court in *Lin*, after acknowledging section 1785.25, subdivision (a), was outside the reach of FCRA preemption, nonetheless held permitting a private cause of action under that section would conflict with the congressional enforcement scheme. (*Lin, supra*, 238 F.Supp.2d at p. 1152.) The court explained section 1785.25, subdivision (a), itself does not provide for a private cause of action for aggrieved consumers. Rather, such actions are authorized by Civil Code section 1785.31, which applies generally to any violation of the Consumer Credit Reporting Agencies Act. Yet Congress did not except that provision from the preemptive effect of the FCRA.[21] According to the *Lin* court, Congress did not do so because that statute is "inconsistent with the enforcement scheme of Congress under FCRA § 1681s-2(d), in matters relating to furnishers of consumer credit information. Congress intended to have exclusive authority to enforce such claims through 'the Federal agencies and officials and the State officials identified in that section.' " (*Lin*, at p. 1152; see *Roybal v. Equifax, supra*, 405 F.Supp.2d at p. 1181, fn. 5 ["[T]here is no private right of action under section 1785.25(a). California Civil Code section 1785.25(a) does not itself provide for a private right of action. Rather, the language which affords consumers a private right of action is found in California Civil Code sections 1785.25(g) and 1785.31. Since only section 1785.25(a) is excepted from preemption but not sections 1785.25(g) or 1785.31, the Court finds that no private right of action exists under section 1785.25(a)."]; see also *Gorman v. Wolpoff & Abramson, LLP, supra*, 370 F.Supp.2d at p. 1011, revd. (9th Cir. 2009) 552 F.3d 1008.)

Similar reasoning was recently embraced by the Court of Appeal in *Liceaga v. Debt Recovery Solutions, LLC* (2008) 169 Cal.App.4th 901 [86 Cal.Rptr.3d 876], which was decided the week before oral argument in the case at bar: "[W]e conclude that the exemption as to the CCRAA must be limited to the first subdivision, (a), of Civil Code section 1785.25. We can find nothing in the writing of section 1681t of the Reform Act or its legislative history that shows that the inclusion in the legislation of subdivision (a) of Civil Code section 1785.25 was the result of error. Had Congress intended the entire CCRAA to be exempt, it would have certainly omitted the reference to subdivision (a), or, in the least, listed some if not all of the other subdivisions as being a part of the exemption." (*Id.* at p. 908.)

---

[21] The *Lin* court also noted section 1785.25, subdivision (g), was not excepted from preemption. (*Lin, supra*, 238 F.Supp.2d at p. 1152.) As we have discussed, however, this subdivision simply provides a defense to furnishers of information; it does not create a private cause of action. Accordingly, its omission from 15 United States Code section 1681t(b)(1)(F) should be irrelevant to any preemption analysis.

In a case decided several days after oral argument in this case, however, the Ninth Circuit rejected the preemption analysis in these cases. In *Gorman v. Wolpoff & Abramson, LLP* (9th Cir. 2009) 552 F.3d 1008, the Court of Appeals reversed the district court's holding that the plaintiff's section 1785.25, subdivision (a), claim against the furnisher of credit information was preempted because the private right of action to enforce that statutory provision is found in sections not specifically exempted from the federal preemption provision. First, the court rejected the district court's suggestion section 1785.25, subdivision (a), could be enforced by state officials, explaining that the authorization for such enforcement, if it exists at all, "almost surely lies in provisions also not specifically excluded by the FCRA preemption provision. The district court's analysis would thus lead to the conclusion that Congress explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism." (552 F.3d at p. 1030.) More significantly, the court emphasized the affirmative preemption language referred only to imposition of a "requirement or prohibition" with respect to subjects regulated by 15 United States Code section 1681s-2. Civil Code sections 1785.25, subdivision (g), and 1785.31, however, "merely provide a vehicle for private parties to enforce other sections, which *do* impose requirements and prohibitions. In other words, Congress had no need to include these enforcement provisions in the § 1681t(b)(1)(F) exception to save the California statutory scheme from preemption by the affirmative language of the preemption provision. By the plain language of the statute, therefore, these sections are not preempted by § 1681t(b)(1)(F)." (552 F.3d at p. 1031.)

■ The trial court found the *Lin* court's analysis "perfectly persuasive." Like the Ninth Circuit, we do not. First, "the enforcement scheme of Congress under [15 United States Code] § 1681s-2(d)," upon which the *Lin* court relied, concerns only violations of 15 United States Code section 1681s-2(a)—the duty to provide accurate information—not all possible claims against furnishers of consumer credit information. Former 15 United States Code section 1681s-2(d), as it read when *Lin* was decided, provided, "*Subsection (a) of this section* shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." (Italics added.) As discussed, 15 United States Code section 1681s-2(b), which imposes a duty to investigate the accuracy of reported information upon receiving notice of a dispute, expressly allows for private causes of action against furnishers of credit information if the requirements of that section are otherwise met. Accordingly, it is simply incorrect to conclude Congress intended to limit to federal and state officials the enforcement of all obligations imposed by the FCRA on the furnishers of

credit information. (Although amended in 2003 and now phrased in somewhat different language, 15 U.S.C. § 1681s-2(d) continues to restrict enforcement of 15 U.S.C. § 1681s-2(a) to certain federal agencies and officials and designated state officials, but imposes no similar limitation on the enforcement of 15 U.S.C. § 1681s-2(b).)

The Court of Appeal in *Liceaga v. Debt Recovery Solutions, LLC, supra,* 169 Cal.App.4th at page 910, similarly suggested Congress intended the exception to preemption for actions under section 1785.25, subdivision (a), to be enforced only by California's chief law enforcement officer or by " 'an official or agency designated' by the state," not by private actions, citing as support for this conclusion 15 United States Code section 1681s(c). But that section simply authorizes state officials to enforce the provisions of the FCRA itself, with certain conditions and limitations, in federal or state court. The sole reference to state law remedies is a savings clause, "In addition to such other remedies as are provided under State law . . ." (§ 1681s(c)), which in no way precludes the continued viability of a private right of action when recognized by state law.

Second, as the Ninth Circuit explained in *Gorman,* Civil Code section 1785.31 itself does not impose any "requirement or prohibition"; it merely authorizes a consumer who has been injured as a result of a violation of the Consumer Credit Reporting Agencies Act to bring an action in a court of appropriate jurisdiction against the person responsible for the injury. Stated slightly differently, unlike section 1785.25—a substantive law provision—Civil Code section 1785.31 is procedural only and therefore is not covered by the preemption language of 15 United States Code section 1681t(b)(1)(F). (*Gorman v. Wolpoff & Abramson, LLP, supra,* 552 F.3d 1008.) Accordingly, there was no need (and no reason) for Congress to specify it was not preempted. (See 15 U.S.C. § 1681t(a) ["[e]xcept as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers"].)

To be sure, as the trial court observed, 15 United States Code section 1681t(a) preempts not only state law "requirements and prohibitions," but also "laws [that] are inconsistent with any provision of this subchapter." (See also *Liceaga v. Debt Recovery Solutions, LLC, supra,* 169 Cal.App.4th at p. 909 ["Subdivision (a) of section 1681t of the Reform Act unequivocally provides that any state law that is not consistent with the FCRA is preempted. Since the FCRA has certain preconditions to proceeding with an action against a furnisher of credit information, and the California statute does not, a

clear inconsistency would exist."].) But the trial court failed to complete the quotation from 15 United States Code section 1681t(a), which continues, "and then only to the extent of the inconsistency." This express statutory command to limit the scope of preemption, combined with the general presumption against preemption repeatedly articulated by the United States Supreme Court, particularly "where federal law is said to bar state action in fields of traditional state regulation" (*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.* (1995) 514 U.S. 645, 655 [131 L.Ed.2d 695, 115 S.Ct. 1671]), belies the trial court's conclusion recognizing a private cause of action under section 1785.25 would be inconsistent with the FCRA's purported prohibition of a private right of action. Indeed, in *Medtronic, supra*, 552 U.S. at p. ___ [128 S.Ct. at p. 1011] the Supreme Court recognized that federal law preempting state statutory or common law requirements different from, or in addition to, the requirements imposed by federal law "does not prevent a State from providing a damages remedy for claims premised on a violation of [federal] regulations; the state duties in such a case 'parallel,' rather than add to, federal requirements." Similarly, because Congress itself has recognized that the requirements of section 1785.25, subdivision (a), are fully consistent with the obligations imposed by federal law, nothing in the FCRA prevents California from providing a damages remedy for Mr. Sanai's claims based on a violation of that statute. (See *Gorman v. Wolpoff & Abramson LLP, supra*, 552 F.3d at p. 1032 ["[E]xempting specific state statutes from preemption is very unusual in federal statutes. To suppose Congress would do so for little or no purpose—as would be the case if the private cause of action under California law were preempted—is simply not plausible."].)[22]

---

[22] Under the private attorney general doctrine, codified in Code of Civil Procedure section 1021.5, a court may award attorney fees to the successful party in an action that has resulted in the enforcement of an important right affecting the public interest. Emphasizing the potential significance of an appellate decision holding a claim under section 1785.25, subdivision (a), is not preempted by the FCRA, Mr. Sanai argues, if successful in his appeal, he is entitled to an award of attorney fees under this doctrine. Whatever other impediments to recovery might exist—not least of which is that any such request is premature since we have only held Mr. Sanai's FCRA claim survives a motion for judgment on the pleadings—because he is seeking damages in excess of $5 million, it is unlikely Mr. Sanai will be able to demonstrate "the necessity and financial burden of private enforcement transcends the litigant's personal interest in the controversy," an essential element for an award of attorney fees under Code of Civil Procedure section 1021.5. (See *Consumer Cause, Inc. v. Mrs. Gooch's Natural Food Markets, Inc.* (2005) 127 Cal.App.4th 387, 401 [25 Cal.Rptr.3d 514]; *City of Hawaiian Gardens v. City of Long Beach* (1998) 61 Cal.App.4th 1100, 1112 [72 Cal.Rptr.2d 134].)

3. *The Trial Court Did Not Commit Reversible Error in Striking Mr. Sanai's Memorandum of Costs After Judgment and Awarding Attorney Fees Under Code of Civil Procedure Section 724.080*

Finding that Mr. Sanai had failed to properly serve the various corporate defendants (because he had not identified any individual to receive service) and that his request for nearly $140,000 in attorney fees should have been made by noticed motion, not claimed in a memorandum of costs, the trial court granted the Saltz parties' motion to strike the memorandum of costs after judgment filed by Mr. Sanai based on his (purported) efforts to enforce this court's award of costs on appeal in *Sanai v. Saltz, supra,* B174924, B170618. Thereafter, the court granted the Saltz parties' motion for an order requiring judgment creditor to execute, file and record acknowledgments of satisfaction of judgment in full, based on their payment of the costs on appeal, and imposed statutory damages/sanctions of $500 against Mr. Sanai pursuant to Code of Civil Procedure section 724.050, subdivision (e). Following further briefing, the court awarded the Saltz parties $50,501.25 in attorney fees pursuant to Code of Civil Procedure section 724.080.

On appeal Mr. Sanai contends the trial court's order striking his April 12, 2006 memorandum of costs after judgment was void and, as a result, all subsequent orders predicated on that initial void order, including the award of attorney fees to the Saltz parties, are also invalid. Mr. Sanai's argument, in substance, is that the Saltz parties had only until April 24, 2006 to file a motion to tax costs under Code of Civil Procedure section 685.070, subdivision (c). Because no motion to tax costs was made within that time, the costs he claimed (including $137,800 in attorney fees) were allowed (Code Civ. Proc., § 685.070, subd. (d)) and added by operation of law to the "judgment" for costs on appeal previously obtained from the court (Code Civ. Proc., § 685.090, subd. (a)(2)). According to Mr. Sanai, the motion to strike the memorandum of costs after judgment, initially filed by the Saltz parties on May 11, 2006, was untimely; the renewed motion filed on June 26, 2006 was not only untimely but also an improper motion for reconsideration under Code of Civil Procedure section 1008. In addition, Mr. Sanai asserts the trial court had no authority to strike the memorandum of costs after judgment once it had been added by operation of law to the judgment. Finally, as to the award of attorney fees to the Saltz parties in connection with their successful motion for an order requiring judgment creditor to execute, file and record acknowledgments of satisfaction of judgment, Mr. Sanai argues that motion, too, constituted an improper motion for reconsideration under Code of Civil Procedure section 1008.

### a. *The memorandum of costs after judgment improperly sought to recover attorney fees as restitution*

In connection with his two appeals decided in *Sanai v. Saltz, supra*, B174924, B170618 on June 28, 2005, Mr. Sanai filed motions requesting restitution under Code of Civil Procedure section 908 to restore him to the position he occupied on January 16, 2001, when the notices of appeal from the trial court's denial of the special motion to strike were filed.[23] Specifically, Mr. Sanai requested this court to order UDR to restore all funds it had obtained from him directly or by execution or garnishment, plus interest at the legal rate, and to order the trial court to hold a hearing to determine the reasonable value of the time Mr. Sanai has spent in the litigation and award him the value of this "lost time," as well as recovery of all out-of-pocket costs and expenses. In declining to order restitution in the first instance on appeal, we held "an appropriate order of restitution requires proper findings based on an adequate record . . . . On remand the trial court is to consider Mr. Sanai's request for restitution and, if necessary, to conduct an accounting of all sums paid by any of the parties subsequent to January 16, 2001 as a result of sanctions orders, fee or costs awards (whether in the trial court or on appeal) or otherwise, to the extent those payments were based in part on orders entered after January 16, 2001, and to order reimbursement of those sums as appropriate."

▆▆▆ Notwithstanding our instructions that any restitution award be based on an adequate record and supported by findings, in his memorandum of costs after judgment Mr. Sanai claimed entitlement to $137,800 in attorney fees.[24] Mr. Sanai's attempt to avoid a hearing on the merits of his restitution request not only contravened our express directions but also violated Code of Civil Procedure sections 685.040 and 685.070, which govern the items

---

[23] Code of Civil Procedure section 908 provides, "When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order. In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored. The reviewing court may take evidence and make findings concerning such matters or may, by order, refer such matters to the trial court for determination."

[24] At a March 8, 2007 hearing Mr. Sanai attempted to explain, "Yes, I did it through the memorandum of costs procedure rather than doing it through the procedure of filing a motion, which would request the same thing, because it is the same thing." Of course, it is not the same. Even if the Saltz parties had failed to file a timely response to a motion for restitution, Mr. Sanai would still bear the burden of establishing by competent evidence and relevant law his entitlement to any sums requested. Yet, at least according to Mr. Sanai, pursuant to the procedures governing a memorandum of costs after judgment, the failure to file a timely motion to tax costs results in an enforceable judgment in his favor whether or not he is, in fact, entitled to restitution.

properly recoverable by a judgment creditor as costs of enforcing a judgment. Section 685.070, subdivision (a)(6), permits recovery of attorney fees as part of a memorandum of costs after judgment only to the extent permitted by section 685.040. That section, in turn, authorizes attorney fees as a cost of enforcing a judgment only "if the underlying judgment includes an award of attorney's fees to the judgment creditor . . . ." (*Ibid.*) The "judgment" in this case was the cost award to Mr. Sanai following his successful appeal in *Sanai v. Saltz, supra*, B174924, B170618. No attorney fees were awarded. Moreover, the fees Mr. Sanai claimed in his memorandum of costs after judgment did not even purport to relate to his efforts to enforce that costs award—they simply reflected his unresolved demand for restitution.

Because the memorandum of costs after judgment was essentially an improper attempt to recover attorney fees not authorized by Code of Civil Procedure section 685.070 (only $752 in other "enforcement costs" were included in the memorandum), the Saltz parties argue the memorandum was invalid and their motion to strike the memorandum was a permissible procedural vehicle to attack the defective filing. Although this argument appears to be well taken, we need not resolve this particular dispute between the parties because, even if the Saltz parties should have denominated their motion as one to tax costs rather than a motion to strike, any error in this regard did not deprive the trial court of jurisdiction to consider the issue on the merits (see *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [16 Cal.Rptr.3d 76, 93 P.3d 1020] [" ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.] When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable."]), nor does it require reversal of the orders actually entered. (See Cal. Const., art. VI, § 13 ["[n]o judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice"]; Code Civ. Proc., § 475 ["[n]o judgment, decision, or decree shall be reversed or affected by reason of any error, ruling, instruction, or defect, unless it shall appear from the record that such error, ruling, instruction, or defect was prejudicial, and also by reason that such error, ruling, instruction, or defect, the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error, ruling, instruction, or defect had not occurred or existed"].)[25]

---

[25] Mr. Sanai suggests, even if the trial court has broad authority to strike documents other than pleadings (compare Code Civ. Proc., § 436 [court authorized to strike pleadings that violate any statute, rule or court order] with Code Civ. Proc., § 187 [court authorized to adopt all means necessary to effectuate its jurisdiction except those expressly proscribed by statute]),

We also reject Mr. Sanai's challenge to the timing of the Saltz parties' motion to strike. The trial court ruled Mr. Sanai's service of his memorandum of costs after judgment was defective as to the various corporate defendants (although not as to Mr. Saltz personally) and expressly found Mr. Sanai "intentionally altered court documents to show that certain individuals were served on behalf of corporate defendants." Against a background of repeated accusations by both sides of improper service and deceptive behavior, the court directed the Saltz parties to file a properly noticed motion to strike the memorandum to bring the issues before the court. The Saltz parties did just that. Under these circumstances, no reversible error occurred. (Mr. Sanai does not raise any substantive challenge to the trial court's ruling on the merits of the motion to strike the memorandum of costs after judgment.)

### b. *No violation of Code of Civil Procedure section 1008 occurred*

 Mr. Sanai's arguments concerning Code of Civil Procedure section 1008 similarly lack merit. As to the Saltz parties' motion to strike the memorandum of costs after judgment, the trial court initially granted the motion, then vacated its order following Mr. Sanai's objection to the manner and timing of notice. However, as discussed, in doing so the court expressly invited the Saltz parties to file a noticed motion to strike the memorandum of costs. The subsequent filing of such a motion at the direction of the court and with its explicit authorization does not constitute an impermissible motion for reconsideration. (See *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1107–1108 [29 Cal.Rptr.3d 249, 112 P.3d 636]; see also *Farber v. Bay View Terrace Homeowners Assn.* (2006) 141 Cal.App.4th 1007, 1015 [46 Cal.Rptr.3d 425] ["Here, the trial court indicated it wanted to reconsider the fee issue when it denied the first motion *without prejudice*, so Code of Civil Procedure section 1008 is inapplicable. Denial of a motion without prejudice impliedly invites

---

that power does not extend to a memorandum of costs after judgment once the time to file a motion to tax has elapsed because the cost items automatically become part of the underlying judgment itself (see Code Civ. Proc., § 685.090, subd. (a)(2)). According to Mr. Sanai, a judgment, including postjudgment cost items, may be challenged only by a motion for new trial or for relief from the judgment under Code of Civil Procedure section 473, subdivision (b). Whatever merit this analysis may have as an abstract proposition, as discussed, the "judgment" Mr. Sanai was purportedly seeking to enforce was simply an earlier award of costs (based on a memorandum of costs on appeal from *Sanai v. Saltz, supra*, B174924, B170618), and had not yet been entered by the clerk on April 24, 2006, the date on which Mr. Sanai asserts the Saltz parties' motion to tax was due. Moreover, Mr. Sanai's memorandum sought the recovery of cost items (attorney fees for his "lost time" in earlier stages of the litigation) wholly outside the scope of Code of Civil Procedure sections 685.040 and 685.070. In this context the trial court had ample authority to consider the merits of the Saltz parties' arguments directed to the propriety of the cost items claimed, and any error in the captioning of the documents filed was harmless.

the moving party to renew the motion at a later date, when he can correct the deficiency that led to the denial."].)

As to the Saltz parties' motion for attorney fees in connection with their motion to execute satisfaction of judgments, Mr. Sanai objected to the initial motion papers because they failed to correctly identify the statutory basis for the attorney fee request (referring only to Code Civ. Proc., § 724.050, subd. (e), allowing an award of damages if the judgment creditor refuses to execute a satisfaction of judgment without just cause, rather than also citing to § 724.080, which authorizes an award of attorney fees to the prevailing party in an action concerning satisfaction of judgment). The trial court, after granting the Saltz parties the substantive relief they requested, ordering Mr. Sanai to execute acknowledgements of satisfaction of judgment and awarding statutory damages/sanctions of $500, continued the matter for further briefing on the issue of attorney fees, including the amount properly awarded to the Saltz parties. Further briefing at the request of the court, even if it included a renewed motion correcting the statutory basis for the application for attorney fees (also filed at the suggestion of the court), does not implicate Code of Civil Procedure section 1008. Because Mr. Sanai has advanced no substantive challenge to the court's award of fees or to the amount of the award, that order is affirmed.

## DISPOSITION

The orders granting judgment on the pleadings with respect to Cyrus M. Sanai's cause of action under Civil Code section 1785.25 and granting judgment on the pleadings without leave to amend as to his cause of action under 15 United States Code section 1681s-2(b), as well as the judgment in favor of Harvey A. Saltz and First Advantage Corporation, are reversed. The order granting judgment on the pleadings with respect to Mr. Sanai's state common law causes of action is affirmed.[26]

The orders striking Mr. Sanai's memorandum of costs after judgment and awarding attorney fees pursuant to Code of Civil Procedure section 724.080 are affirmed. The order awarding attorney fees to Mr. Saltz and First

---

[26] In light of our holdings on preemption and the viability of Mr. Sanai's proposed amendment to his federal cause of action, any further issues with respect to the trial court's orders denying leave to amend the complaint and granting a stay of discovery pending its determination of the motion for judgment on the pleadings are moot. Contrary to Mr. Sanai's suggestion at oral argument, we do not construe the trial court's May 12, 2006 order granting First Advantage Corporation's motion for a protective order staying discovery pending determination of potentially case-dispositive motions as including a ruling on Mr. Sanai's claim that First Advantage Corporation had waived any objections to his discovery demands by failing to respond in a timely fashion. That issue, to the extent it survives on remand, should be decided by the trial court in the first instance.

Advantage Corporation as the prevailing parties on the Fair Credit Reporting Act claim is reversed in light of our decision reversing the judgment in this matter. Mr. Sanai's request for attorney fees is denied.

The cause is remanded for further proceedings not inconsistent with this opinion.[27] All parties are to bear their own costs on appeal.

Woods, J., and Zelon, J., concurred.

A petition for a rehearing was denied February 18, 2009, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 29, 2009, S170840.

---

[27] Mr. Sanai's request that we direct further proceedings be heard before a new trial judge is denied. (See Code Civ. Proc., § 170.1, subd. (c).)