Amir PIROUZIAN, Plaintiff,

v.

SLM CORP., a/k/a Sallie Mae, Inc., a Virginia Corporation, Defendant.

No. 04CV2033BTMJFS.

United States District Court, S.D. California.

Aug. 30, 2005.

Robert L. Hyde, Joshua B. Swigart, Hyde & Swigart, San Diego, CA, for Plaintiff Amir Pirouzian.

William C. Pate, Best Best & Kreiger LLP, San Diego, CA, for Defendant Sallie Mae, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTION TO STRIKE

MOSKOWITZ, District Judge.

On April 5, 2005, Defendant Sallie Mae, Inc. filed (1) a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c); and (2) a motion to strike portions of the Complaint pursuant to Fed.R.Civ.P. 12(f). For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for judgment on the pleadings and DENIES Defendant's motion to strike.

### I. *BACKGROUND*

The following allegations are made in the Complaint; the Court does not make any findings as to the truth of these allegations. Plaintiff is a physician who partially funded his education through federally-funded student loans. (Complaint, ¶ 17.) Defendant is a corporation engaged in a variety of services related to student loans. Defendant is the servicer of Plaintiff's student loans. (*Id.*) It is unclear whether Defendant is also the lender of Plaintiff's student loans.

On a number of occasions, Plaintiff contacted Defendant by telephone and re-

quested a forbearance on his student loans. (Complaint, ¶ 18.) Defendant always orally agreed to grant Plaintiff a forbearance. (Complaint, ¶ 19.)

On or about June 2003, Plaintiff received an oral forbearance from Defendant in keeping with their past practices. (Complaint, ¶ 20.) Plaintiff understood from his conversations with Defendant that while the loans were in forbearance, Defendant would refrain from reporting negative credit information about Plaintiff to credit reporting agencies, and would not demand payment on the loans. (Complaint, ¶ 21.) However, when Plaintiff reviewed his credit report during this forbearance period, he discovered that Defendant had reported negative credit information about him to a number of credit reporting agencies. (Complaint, ¶ 22.)

Plaintiff contacted Defendant and demanded to know why Defendant violated its previous agreement to grant Plaintiff a forbearance. (Complaint, ¶ 23.) Defendant denied ever agreeing to a forbearance and stated that Defendant would never grant a forbearance over the telephone. (Complaint, ¶ 24.) Defendant then informed Plaintiff that if he paid all of the past due payments Defendant claimed were owed, Defendant would instruct the credit reporting agencies to remove all of the negative credit information in dispute. (Complaint, ¶ 25.) Plaintiff agreed and paid the alleged past-due payments. (Complaint, ¶ 26.) However, Defendant failed to correct the negative credit information as promised. (Complaint, ¶ 27.) Defendant also failed to inform the credit reporting agencies, that the previously reported debt was in dispute. (Complaint, ¶ 29.) Furthermore, Plaintiff alleges that Defendant failed to adequately investigate Plaintiff's claims that the negative credit information was inaccurate and should be corrected. (Complaint, ¶ 32.)

Subsequently, Plaintiff wrote to the credit reporting agencies and disputed the accuracy of the reported information. (Complaint, ¶ 30.) The credit reporting agencies conducted an investigation into the dispute. (Complaint, ¶ 31.) During the investigation, the credit reporting agencies contacted Defendant. (*Id.*) When contacted, Defendant claimed that Plaintiff had failed to pay debts that were owed. (*Id.*) Defendant failed to reinvestigate Plaintiff's claims regarding the inaccuracy of this information. (Complaint, ¶ 32.)

Plaintiff alleges violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 *et seq.*, and the California Fair Debt Collection Practices Act (CFDCPA) (also known as the "Rosenthal Fair Debt Collection Practices Act"), Cal. Civ.Code §§ 1788–1788.32.

## II. *LEGAL STANDARD*

A motion for judgment on the pleadings attacks the legal sufficiency of the claims alleged in the Complaint. This Court must construe "all material allegations of the non-moving party as contained in the pleadings as true, and [construe] the pleadings in the light most favorable to the [non-moving] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir.1998). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989).

## III. *DISCUSSION*

### A. *Fair Credit Reporting Act*

 Defendant argues that Plaintiff's FCRA claims under 15 U.S.C. § 1681s–2(a) fail because there is no private right

of action for violations under said provision. The Court agrees. However, the Court also finds that Plaintiff has a valid FCRA claim under 15 U.S.C. § 1681s–2(b).

Congress passed the FCRA in 1968 with the intent that "consumer credit reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information...." 15 U.S.C. § 1681(b). Originally, the FCRA established duties for consumer reporting agencies and users of consumer reports, but did not address the requirements for furnishers of information.

In 1996, Congress passed the Consumer Credit Reporting Reform Act, which amended the FCRA and imposed duties on furnishers of information. Pub.L. No. 90–321, Title VI, § 623, as added Pub.L. No. 104–208, Div. A., Title II, § 2413(a)(2), 110 Stat.2009–447. As amended, the FCRA requires furnishers of credit information to provide accurate information about consumers to consumer credit reporting agencies. 15 U.S.C. § 1681s–2(a). It also requires that furnishers correct any erroneous information previously reported. *Id.* Furthermore, furnishers of credit information must conduct an investigation upon receiving notice from a consumer credit reporting agency regarding a dispute about the accuracy or completeness of information previously provided to the consumer reporting agency. 15 U.S.C. § 1681s–2(b). If, after such investigation, the furnisher of information finds that the information is inaccurate, the furnisher must report those results to the consumer reporting agencies to which the information was furnished. *Id.*

Based on the allegations of the Complaint, Defendant may have violated 15 U.S.C. § 1681s–2(a) by failing to provide accurate information about Plaintiff to the credit reporting agencies and by failing to correct previously reported information. However, subsection (d) states that subsection (a) shall be "enforced *exclusively* under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section." (Emphasis added.) Therefore, there is no private right of action for violations of section 1681s–2(a).

Although Plaintiff did not specifically allege a violation of section 1681s–2(b), the Court finds that the facts in the Complaint sufficiently support a claim under that section.[1] Plaintiff alleges that "Defendant failed to adequately investigate or reinvestigate Plaintiff's claim that the derogatory information filed was inaccurate and thereafter correct this inaccurate information." (Complaint, ¶ 32.) The Court construes the word "reinvestigate" to refer to a failure by Defendant to adequately reinvestigate the accuracy of the negative credit information Defendant had supplied to the credit agencies after Defendant learned from the credit agencies that Plaintiff had disputed the reports to the credit agencies.[2]

**B. Rosenthal Fair Debt Collection Practices Act**

The purpose of the CFDCPA is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and

---

1. Plaintiff alleged that Defendant violated § 1681s–2 generally, in addition to §§ 1681 *et seq.*

2. Defendant may have been able to prevail on a motion for more definite statement under Fed.R.Civ.P. 12(e). However, Defendant did not bring such a motion.

honoring such debts..." Cal. Civ.Code § 1788.1(b). Section 1788.17 provides that a violation of the CFDCPA occurs if a debt collector violates any of 15 U.S.C. §§ 1692b–1692j.

Plaintiff alleges that Defendant violated Cal. Civ.Code § 1788.17 by violating 15 U.S.C. §§ 1692e(2), 1692e(8), 1692e(10) and 1692f. Section 1692e(2) proscribes the false representation of "the character, amount, or legal status of any debt." Section 1692e(8) prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Section 1692e(10) bans "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Section 1692f(1) prohibits the "collection of any amount...unless such amount is expressly authorized by the agreement creating the debt or permitted by law." [3]

Defendant argues that Plaintiff's CFDCPA claims are preempted by the federal Higher Education Act, 20 U.S.C. §§ 1070 *et seq.*, (HEA), Fair Credit Reporting Act (FCRA) 15 U.S.C. §§ 1681 *et seq.*, and Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 *et seq.* The court finds that Plaintiff's claims are preempted by the HEA and FCRA, but not the FDCPA.

### 1. *Preemption by the Higher Education Act*

▮ Defendant contends that Plaintiff's CFDCPA claims are preempted by the HEA. A federal law preempts state law if the scope of the federal law suggests that Congress intended to occupy the field of regulation exclusively or when there is

actual conflict between the state and federal law. *Sprietsma v. Mercury Marine*, 537 U.S. 51, 64, 123 S.Ct. 518, 154 L.Ed.2d 466 (2002). There is an actual conflict between state and federal law when it is impossible for a party to comply with both state and federal law or where state law acts as an obstacle to the full purposes and objectives of the federal law. *Id.* Defendant argues that Plaintiff's CFDCPA claims, if allowed, would hinder the achievement of Congress' goals to encourage participation of private entities in the student loan system and to ensure the student loan system's viability.

The HEA creates a system whereby the federal government indirectly insures student loan lenders in case a student loan debtor defaults on his or her loans. *See generally* Timothy Neagele, *The Guaranteed Student Loan Program: Do Lenders' Risks Exceed their Rewards?*, 34 Hastings L.J. 599 (1983). Under the HEA, lending institutions disperse their own funds to qualified student borrowers for use by the borrower to attend eligible post-secondary schools. *Student Loan Fund of Idaho, Inc. v. U.S. Dept. of Educ.*, 272 F.3d 1155, 1157 (9th Cir.2001). The loans dispersed by private lenders are guaranteed by state agencies or non-profit organizations. *Id.* These state agencies and non-profit organizations are in turn subsidized and reinsured by the Department of Education. *Id.* The federal government pays a portion of the interest on each student's federally insured loan. 20 U.S.C. § 1071(a)(1)(C). The purpose of the HEA, according to section 1071(a)(1), is:

(A) to encourage States and nonprofit private institutions and organizations to establish adequate loan insurance programs for students in eligible institu-

---

**3.** 1692f(1) is most likely inapplicable. Even if Plaintiff was granted a forbearance, the amount Defendant collected from Plaintiff was authorized by the original loan agreement. The other subsections of 1692f clearly do not apply.

tions (as defined in section 1085 of this title),

(B) to provide a Federal program of student loan insurance for students or lenders who do not have reasonable access to a State or private nonprofit program of student loan insurance covered by an agreement under section 1078(b) of this title,

(C) to pay a portion of the interest on loans to qualified students which are insured under this part, and

(D) to guarantee a portion of each loan insured under a program of a State or of a nonprofit private institution or organization which meets the requirements of section 1078(a)(1)(B) of this title.

In 1986, the Secretary of Education promulgated a new regulation, 34 C.F.R. § 682.411, which requires a lender to exercise due diligence by performing a series of collection efforts when a student borrower becomes delinquent. The regulation specifies that the lender must make certain efforts to contact the borrower, including written notices and telephone contact, and requires that within a certain time period, the lender request default aversion assistance from the guarantee agency.

In 1990, the Secretary of Education issued a notice of interpretation which analyzes 34 C.F.R. § 682.411 and its preemptive effects on inconsistent state laws. 55 Fed.Reg. 40120. The interpretation explains that the requirements created in 1986 were "designed to prevent defaults and the loss to the Federal Treasury, through claims under the Department's reinsurance commitments, caused by these defaults, and where these have already occurred, to recover from defaulting bor-

rowers the amounts paid from the Treasury." *Id.* The interpretation further explains that "the Secretary clearly intended [34 C.F.R. § 682.411] to establish a uniform national minimum level of collection activity, and therefore to preempt any State rule that would hinder or prohibit the collection actions required under the rules." *Id.* The Secretary concludes that 34 C.F.R. § 682.411 preempts any "State law that would prohibit, restrict, or impose burdens on the completion of that sequence of contacts either on [federally insured student] loans in general, or on any category of [federally insured student] loans." *Id.*

Plaintiff's CFDCPA claims concern the reporting of inaccurate information to credit reporting agencies and the failure to correct such information. The CFDCPA provisions upon which Plaintiff relies do not impose duties which would hinder Defendant from contacting Plaintiff or otherwise making the collection efforts required by 34 C.F.R. § 682.411.

However, the Ninth Circuit Court of Appeals has interpreted 55 Fed.Reg. 40120 as requiring preemption in any circumstance where state law regulates pre-litigation collection activity. *Brannan v. United Student Aid Funds, Inc.,* 94 F.3d 1260, 1263 (9th Cir.1996). In *Brannan,* the majority opinion relied on 55 Fed.Reg. 40120 in holding that the Oregon Unfair Debt Collection Practices Act was preempted by the HEA. The majority explained that " 'preemption includes *any* State law that would hinder or prohibit *any* activity' taken by third-party debt collectors prior to litigation."[4] *Id.* at 1266 (quoting 55 Fed. Reg. at 40121).

---

4. While *Brannan* focuses its discussion on third-party debt collectors, its holding applies equally to lenders. As already discussed, the notice of interpretation, upon which the majority opinion relies, pertains to lenders as well as third-party debt collectors and guarantee agencies. The policy goal of ensuring that student loan debt is paid applies to lenders and third-party debt collectors alike.

As noted by Circuit Judge Fletcher, concurring in part and dissenting in part, the majority opinion appears to hold that *all* state laws that prohibit debt collectors from doing *anything* related to pre-litigation federal collection are preempted, regardless of whether the state laws burden compliance with HEA due diligence requirements. *Id.* at 1268–69. Accordingly, under *Brannan,* the CFDCPA claims in this case, all of which deal with allegedly improper pre-litigation collection actions by Defendant, are preempted.

The CFDCPA claims that are based on Defendant's reporting of negative credit information about Plaintiff are further preempted by 20 U.S.C. § 1080a(a). Under section 1080a(a), "each guarantee agency, eligible lender, and subsequent holder [of federally insured student loans] shall enter into agreements with credit bureau organizations to exchange information concerning student borrowers." When a loan has not been repaid by the borrower, the lender must report the amount loaned, the amount remaining to be paid, and the date of any default of the loan. 20 U.S.C. § 1080a(a)(1)-(3). State laws that impose duties with respect to the furnishing of negative credit information to credit reporting agencies may deter lenders from complying with section 1080a(a) and are therefore preempted. *See* 55 Fed. Reg. at 40122 (explaining that section 1080a "preempts any conflicting or inconsistent State law.").

### 2. *Preemption by the Fair Credit Reporting Act*

■ Plaintiff's CFDCPA claims are also preempted by the FCRA. The FCRA states that it does not preempt state laws regarding the collection, distribution, or use of any information on consumers, except when state and federal law conflict. 15 U.S.C. § 1681t(a). However, state law may not address the subject matter of § 1681s–2, which relates "to the responsi-

bilities of persons who furnish information to consumer reporting agencies...." 15 U.S.C. § 1681t(b)(1)(F).

Plaintiff argues that the FCRA does not preempt his CFDCPA claims because the FCRA pertains to the reporting of credit information, while the CFDCPA regulates the collection of debts. However, statutes that do not overtly regulate credit reporting may still have the effect of regulating that area. As the Eastern District of Pennsylvania noted in *Jaramillo v. Experian Information Solutions, Inc.,* 155 F.Supp.2d 356, 362 (2001):

> The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.

All of the CFDCPA claims in this case are preempted by the FCRA because they pertain to Defendant's reporting of or failure to report certain information about Plaintiff. Specifically, Plaintiff alleges that Defendant violated the CFDCPA by failing to communicate to the credit reporting agencies that Plaintiff's debt to Defendant was in dispute and by failing to correct the erroneous information. The claims clearly relate "to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681s–2.

### 3. *Preemption by the Fair Debt Collection Practices Act*

■ Defendant also contends that Plaintiff's CFDCPA claims are preempted by the FDCPA.

Both the CFDCPA and the FDCPA regulate the collection practices of debt collec-

tors. The FDCPA provides that it does not preempt state law unless the federal law and state law are inconsistent. 15 U.S.C. § 1692n. The FDCPA further provides: "A State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter." *Id.*

Defendant argues that the CFDCPA claims should be preempted because the CFDCPA and the FDCPA define "debt collector" differently. The FDCPA limits the definition of debt collector to one who collects debts "owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). The CFDCPA defines a debt collector more broadly as one who collects debts "on behalf of himself or herself or others, engage[d] in debt collection." Cal. Civ.Code § 1788.2(c).

However, the CFDCPA's more inclusive definition of "debt collector" is not "inconsistent with" the FDCPA. By enlarging the pool of entities who can be sued, the CFDCPA merely affords a separate state remedy, which grants protection beyond what is provided by the FDCPA. As explained by the Northern District of California in *Alkan v. Citimortgage, Inc.*, 336 F.Supp.2d 1061, 1065:

> California has not somehow expanded the scope of federal liability under the FDCPA through [the CFDCPA]. Instead, California simply incorporated by reference the text of certain federal provisions into the CFDCPA, rather than copying them verbatim into the California code. Any resulting liability, however, remains a state claim.
>
> The real issue is whether California is permitted to impose these duties on the broad range of entities it defines as debt collectors. As discussed, nothing indicates that Congress intended to preempt the CFDCPA or to completely occupy the field of debt collection.

Defendant also argues that Plaintiff's CFDCPA claims are preempted because the CFDCPA and FDCPA have inconsistent enforcement schemes. Pointing to 15 U.S.C. § 1692l, Defendant claims that the FDCPA is exclusively enforced by the FTC. Defendant is incorrect. The FDCPA provides for private rights of action as well as administrative enforcement. 15 U.S.C. § 1692k. Therefore, the CFDCPA's enforcement provisions are not inconsistent with the FDCPA.

Plaintiff's CFDCPA claims are not preempted by the FDCPA. However, as already discussed, they are preempted by both the HEA and FCRA.

## IV. *CONCLUSION*

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for judgment on the pleadings [11–1]. The motion is **GRANTED** as to Plaintiff's claims under 15 U.S.C. § 1681s–2(a) and the California Fair Debt Collection Practices Act, Cal Civ.Code §§ 1788–1788.32; the Court shall enter judgment in favor of Defendant on these claims. The motion is **DENIED** as to Plaintiff's claim under 15 U.S.C. § 1681s–2(b). The Court **DENIES** Defendant's motion to strike [11–2] as moot. Defendant shall file an answer as to the remaining claim within 20 days after this order is stamped "filed."

**IT IS SO ORDERED.**