[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts 2 and 4 of the Discussion.
[EDITORS' NOTE: TEXT NOT CERTIFIED FOR PUBLICATION APPEARS WITH GRAY BACKGROUND BELOW.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 791 
OPINION
Appellants Robert A. Brown and Susana Brown, as individuals and as guardians ad litem of their two minor children, sued Stewart Mortensen and others for allegedly disclosing the Browns' and their minor children's confidential medical information in violation of the Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56 et seq.).[1] The operative complaint is the Browns' fourth amended complaint and the only causes of action before us are the third and fourth causes of action against Mortensen. In ruling on Mortensen's demurrer, the trial court found the third and fourth *Page 792 
causes of action impermissibly vague and therefore sustained the demurrer with leave to amend. The Browns chose not to amend their complaint further. Accordingly, the trial court dismissed the third and fourth causes of action with prejudice.
We conclude the Browns' third and fourth causes of action against Mortensen are not impermissibly vague or confusing. We also conclude, however, that the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) preempts the Browns' claims against Mortensen. Accordingly, we affirm the trial court's order dismissing with prejudice the Browns' third and fourth causes of action against Mortensen.
 BACKGROUND
These facts are based on the allegations in the Browns' fourth amended complaint.
Robert Brown and his two minor children received dental services from the Reinholds defendants, who are not parties to this appeal (the dentists). Mortensen had an agreement with the dentists for the collection of an allegedly outstanding debt owed by Mr. Brown to the dentists for dental services. Under their agreement, Mortensen would share the proceeds of the collection of the debt with the dentists.
In March 2001, Mortensen and Mr. Brown spoke by telephone. During their conversation, Mortensen claimed Mr. Brown owed money to the dentists. Mr. Brown asked Mortensen to provide some verification of the alleged debt. In response, Mortensen sent Mr. Brown a copy of not only Mr. Brown's dental chart, but the dental charts for his two minor children as well. In May 2001, Mortensen and Mr. Brown again spoke by telephone. Mortensen claimed the dental charts verified the debt owed by Mr. Brown. Mr. Brown disagreed and complained that the dental charts included confidential medical information about his two minor children and himself. The charts revealed, for example, the children's and Mr. Brown's names, Social Security numbers, dates of birth, residence addresses, telephone numbers, health care providers, health care treatments and treatment dates.
Soon after their conversation, and continuing for a period of approximately two years, Mortensen used and disclosed the dental charts, including the confidential medical information contained in them, to three consumer credit reporting agencies (specifically, Experian, Equifax and Trans Union). Mortensen made these repeated disclosures for purposes of verifying the claim that Mr. Brown owed money to the dentists. Mortensen made these disclosures despite (i) the fact that Mr. Brown had told Mortensen that the *Page 793 
charts included confidential medical information, and (ii) the fact that there was no claim that Mr. Brown's two minor children owed money to the dentists. The Browns never authorized disclosure of the dental charts and confidential medical information. In fact, the Browns repeatedly asked defendants not to make such disclosures, but the disclosures continued.
Mr. Brown also wrote to the credit reporting agencies, explaining that the information they had received was inaccurate and incomplete. In response, the credit reporting agencies contacted Mortensen for verification of the alleged debt. Mortensen then provided to the credit reporting agencies Mr. Brown's dental history and payments to the dentists for the past 10 years. Mr. Brown claimed that detailed history was not only unnecessary to the alleged debt collection, but was also inaccurate. Mr. Brown then requested that the dentists contact the credit reporting agencies to ask them to delete the information Mortensen had provided. The dentists refused to do so and, in fact, made further disclosures to the credit reporting agency Equifax.
Following these events, the Browns sued Mortensen and the dentists. The Browns amended their complaint four times. The fourth amended complaint alleged violations of CMIA and, in the alternative only, violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) (FDCPA). The Browns named Mortensen in the third and fourth causes of action for violations of CMIA, as well as in the fifth cause of action for violations of FDCPA. After considering defendants' demurrers, the trial court dismissed with prejudice the Browns' third and fourth causes of action. The Browns eventually dismissed with prejudice the fifth cause of action, which was the only remaining cause of action against Mortensen.
On appeal, the Browns challenge the trial court's order dismissing the third and fourth causes of action.
 DISCUSSION
1. Standard of Review
We review de novo the trial court's order of dismissal after sustaining a demurrer. "On appeal from an order dismissing an action after the sustaining of a demurrer, we independently review the pleading to determine whether the facts alleged state a cause of action under any possible legal theory." (Changv. Lederman (2009) 172 Cal.App.4th 67, 75
[90 Cal.Rptr.3d 758].) We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law. (Id. at p. 76.) We read the complaint as a whole and its parts in context, giving the complaint a reasonable interpretation. (Stonehouse HomesLLC v. *Page 794 City of Sierra Madre (2008) 167 Cal.App.4th 531, 538
[84 Ca1.Rptr.3d 223].) "When a demurrer is sustained with leave to amend but the plaintiff elects not to do so, we presume the complaint states as strong a case as the plaintiff can muster. [Citations.] We will affirm if the trial court's decision to sustain the demurrer was correct on any theory. [Citations.]" (Id. at p. 539.)
2. Uncertainty*
 Although the Browns' fourth amended complaint may not be a model of clarity, it is not fatally uncertain or confusing. It is clear from the caption of the complaint that the Browns assert claims for violations of the CMIA and, in the alternative, one claim for violations of the FDCPA. The title of the complaint states "Fourth Amended Complaint for Damages and Injunctive Relief for: Violations of Confidentiality of Medical Information Act (Civil Code §§ 56 et. seq.); and, in the alternative only Violations of Fair Debt Collection Practices Act (15 U.S.C. § 1692 et. seq.)." The third and fourth causes of action allege violations of CMIA.[2] Those causes of action not only allege that the defendants violated CMIA, but also allege that Mortensen made unauthorized, unexcused disclosures of privileged medical information. (See Hellerv. Norcal Mutual Ins. Co. (1994) 8 Cal.4th 30, 38; Civ. Code §§ 56.05, subd. (g), 56.10, 56.13.)
Each cause of action also states which party is bringing the claim and against whom it is directed. The third cause of action states it is by the two minor plaintiff's against Mortensen individually and doing business as Credit Bureau Services and Does 30 through 70. Similarly, the fourth cause of action states it is by Mr. Brown against Mortensen individually and doing business as Credit Bureau Services and Does 30 through 100. (See Cal. Rules of Court, rule 2.112.)
Mortensen claims the complaint is unclear as to which defendants made the alleged CMIA violations. But, in the third and fourth causes of action — for example, paragraphs 66, 67, 96, 97 and 102 of the fourth amended complaint — the Browns repeatedly allege that Mortensen disclosed confidential medical information. Although these causes of action also include general references to "defendants," reading the complaint as a whole and its parts in context, we conclude the complaint is not impermissibly vague or confusing. (Stonehouse Homes v. Cityof Sierra Madre, supra, 167 Cal.App.4th at p. 538.) Moreover, when a complaint is uncertain in some respects, the parties can clarify ambiguities during discovery. (Khoury v.Maly's of California, Inc. (1993) 14 Cal.App.4th 612, 616.)
3. Preemption under the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)
Mortensen argues that, even if the fourth amended complaint is not overly confusing or vague, the trial court's order of dismissal should nonetheless be affirmed because the complaint fails to state a claim as a matter of law. Mortensen asserts the Browns' CMIA claims are preempted by the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.). We agree. The language of the FCRA dictates that, because the Browns' CMIA claims are based on Mortensen's alleged disclosure of information to consumer reporting agencies, those claims are preempted. Although our research reveals no cases addressing the relationship between the CMIA and the FCRA, our decision is supported by Sanai v. Saltz (2009) 170 Cal.App.4th 746
[88 Cal.Rptr.3d 673] (Sanai), a recent decision from Division Seven of this court, as well as several federal district court cases, which we discuss below.
a. Issue raised for first time on appeal
As an initial matter, we note Mortensen did not argue preemption under the FCRA before the trial court. Generally, a party may not raise new issues on appeal. (B P Development Corp.v. City of Saratoga (1986) 185 Cal.App.3d 949, 959
[230 Cal.Rptr. 192].) Nonetheless, we consider Mortensen's FCRA argument because it raises a question of law based on undisputed facts. "A demurrer is directed to the face of a complaint (Code Civ. Proc., § 430.30, subd. (a)) and it raises only questions of law (Code Civ. Proc., § 589, subd. (a); [citation]). Thus an appellant challenging the sustaining of a general demurrer may change his or her theory on appeal [citation], and an appellate court can affirm or reverse the ruling on new grounds." (B P Development Corp., supra,185 Cal.App.3d at p. 959.)
b. Preemption
The supremacy clause ofarticle VI of the United States Constitution preempts state law in three circumstances: (1) express preemption, *Page 795 
(2) implied preemption (or field preemption), and (3) conflict preemption. (Sanai, supra, 170 Cal.App.4th at p. 771;English v. General Electric Co. (1990) 496 U.S. 72,78-79 [110 L.Ed.2d 65, 110 S.Ct. 2270].) Express preemption is at issue here — specifically, the scope of the FCRA's express preemption of state law.
The FCRA provides that it "does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, or for the prevention or mitigation of identity theft, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency." (15 U.S.C. § 16811(a).)
The FCRA continues, however, by listing multiple exceptions to that general rule. Of those exceptions, one is relevant here — namely, 15 United States Code section 1681t(b)(1)(F) (section 1681t(b)(1)(F)). That section dictates that no state may impose requirements or prohibitions on persons who furnish information to consumer reporting agencies. Specifically, section 1681t(b)(1)(F) provides that "[n]o requirement or prohibition may be imposed under the laws of any State — [¶] (1) with respect to any subject matter regulated under — [¶] (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies."[3] Section 1681s-2 governs the duties of furnishers of information to consumer reporting agencies. (15 U.S.C. § 1681s-2.) Thus, notwithstanding the general language preserving state laws that do not conflict with the FCRA, the FCRA "strictly limit[s] the availability of consumer's state remedies against furnishers of credit information." (Sanai, supra,170 Cal.App.4th at p. 773.) The plain language of section 1681t(b)(1)(F) preempts state law relating to the duties of furnishers of information to consumer reporting agencies.
As explained above, in their third and fourth causes of action against Mortensen, the Browns allege violations of the CMIA. Those claims are based on Mortensen's alleged disclosure of confidential medical information to the consumer reporting agencies Equifax, Trans Union and Experian. The complaint alleges that Mr. Brown told Mortensen not only that Mr. Brown owed no money to the dentists, but also that the documents Mortensen was referring to and relying on for the alleged debt, included confidential medical information. Despite having been told this, Mortensen allegedly furnished the *Page 796 
information, including the confidential medical information, to three consumer reporting agencies. Thus, as alleged in the third and fourth causes of action, the CMIA violations arise from Mortensen's disclosures to consumer reporting agencies.
Although the CMIA does not govern credit reporting, the Browns' third and fourth causes of action are nonetheless preempted by the FCRA because they are rooted in Mortensen's furnishing of information to consumer reporting agencies. "The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action." (Jaramillo v. ExperianInformation Solutions, Inc. (E.D.Pa. 2001)155 F.Supp.2d 356, 362 [finding FCRA preempts state unfair trade practices and consumer protection law].)
As previously noted, we have found no cases addressing the interplay of the CMIA and the FCRA. However, multiple federal district courts have addressed the scope of FCRA preemption under section 1681t(b)(1)(F). For example, in Pirouzian v.SLM Corp. (S.D.Cal. 2005) 396 F.Supp.2d 1124, 1130, the court held the FCRA preempted the plaintiff's claims under the Rosenthal California Fair Debt Collection Practices Act (CFDCPA) (Civ. Code, § 1788 et seq.). There, the plaintiff alleged that the defendant (i) failed to tell credit reporting agencies that the plaintiff disputed the debt at issue and (ii) failed to correct the erroneous information. The district court determined that those claims related to the responsibilities of those who furnish information to consumer reporting agencies as governed by section 1681s-2. (Pirouzian,396 F.Supp.2d at p. 1130.) In so finding, the court rejected the plaintiff's argument that, because the FCRA regulates the reporting of credit information while the CFDCPA regulates the collection of debts, the FCRA could not preempt his CFDCPA claims. (396 F.Supp.2d at p. 1130.) The court explained that "statutes that do not overtly regulate credit reporting may still have the effect of regulating that area." (Ibid.)
Similarly, in Howard v. Blue Ridge Bank (N.D.Cal. 2005)371 F.Supp.2d 1139, the court held the FCRA preempted the plaintiff's unfair competition claim brought under Business and Professions Code section 17200 (section 17200). There, the plaintiff brought multiple claims (including the § 17200 claim as well as FCRA claims) against various defendants. (Howard, 371 F.Supp.2d at p. 1142.) The plaintiff's claims stemmed from allegedly inaccurate and derogatory information furnished to and reported by consumer reporting agencies. (Ibid.) The court rejected the plaintiff's argument that the FCRA did not preempt his section 17200 claim because section 17200 is not *Page 797 
inconsistent with the FCRA, but merely provides an additional state remedy for the conduct giving rise to the FCRA claim. (371 F.Supp.2d at p. 1143.) The court noted that "[w]hile furnishers may be liable to private litigants under15 U.S.C. § 1681s-2(b) based on the information they provide to credit agencies, [citation], it appears that Congress intended the FCRA to be the sole remedy against these furnishers." (Ibid.) Thus, the court concluded that "Congress intended the FCRA to preempt state laws regarding the duties of furnishers and the remedies available against them, rather than allowing different liabilities for furnishers depending on the state of suit." (Id. at p. 1144.)
And, in Roybal v. Equifax (E.D.Cal. 2005)405 F.Supp.2d 1177, the court dismissed the plaintiffs' state law claims because the court found they were preempted by the FCRA. There, the plaintiffs brought federal and state claims against multiple defendants based on inaccurate information being furnished to and reported by consumer reporting agencies. (405 F.Supp.2d at p. 1178.) The plaintiffs' state law claims were for negligence, negligent misrepresentation as well as for violations of section 17200, the CFDCPA, and the Consumers Legal Remedies Act (Civ. Code § 1750 et seq.). (405 F.Supp.2d at p. 1178, fn. 1.) The court found that the plaintiffs' state law claims arose solely from the alleged furnishing of inaccurate information to credit reporting agencies. (Id. at p. 1182.) The court concluded, therefore, that the FCRA preempted the plaintiffs' state law claims "in their entirety." (405 F.Supp.2d at p. 1182.)[4]
In Sanai, Division Seven of this court held the FCRA preempted the plaintiff's common law tort claims, which were based on the defendants' acts of furnishing information to consumer reporting agencies. (Sanai, supra,170 Cal.App.4th at p. 773.) There, the plaintiff's landlord had hired the defendants to report to consumer credit reporting agencies a debt plaintiff allegedly owed the landlord. Upon learning of the negative information on his credit reports, the plaintiff sued the defendant furnishers of information, alleging causes of action for slander, libel, intentional and negligent interference with prospective economic advantage, intentional and negligent infliction of emotional distress, violations of the Consumer Credit Reporting Agencies Act (Civ. Code § 1785.1 et seq.) and violations of the FCRA. (Sanai,supra, 170 Cal.App.4th at pp. 752-753.) Division Seven affirmed the trial court's order *Page 798 
granting judgment on the pleadings as to the plaintiffs state common law claims. The court held that section 1681t(b)(1)(F) "totally preempts all state common law tort claims against furnishers of credit information arising from conduct regulated by 15 United States Code section 1681s-2, including [the plaintiffs] common law tort claims against [the defendants]." (Sanai, supra, 170 Cal.App.4th at p. 773.)
In light of these cases and our reading of section 1681t(b)(1)(F), we conclude the FCRA preempts the Browns' third and fourth causes of action. Although the CMIA does not regulate consumer reporting, when CMIA claims such as those at issue here relate to the subject matter regulated under section 1681s-2 (i.e., the responsibilities of persons who furnish information to consumer reporting agencies), those claims are preempted by the FCRA. (§ 1681t(b)(1)(F).)
The Browns rely on Credit Data of Arizona, Inc. v. Stateof Ariz. (9th Cir. 1979) 602 F.2d 195, Davenport v.Farmers Ins. Group (8th Cir. 2004) 378 F.3d 839, andCisneros v. U.D. Registry, Inc. (1995)39 Cal.App.4th 548 [46 Cal.Rptr.2d 233] for the proposition that the FCRA does not preempt their claims. But none of those cases addresses section 1681t(b)(1)(F) and, in fact, two of them were decided before Congress enacted that section in 1996. The cases are therefore unhelpful.
The Browns also discuss the Fair and Accurate Credit Transactions Act of 2003 (FACTA) (Pub.L. No. 108-159 (Dec. 4, 2003) 117 Stat. 1952). In December 2003 Congress enacted the FACTA, which amended the FCRA and added, among other things, specific provisions addressing the use and sharing of medical information in the financial system. (See Pub.L. No. 108-159
(Dec. 4, 2003) 117 Stat. 1999-2003.) Those new provisions took effect after the events at issue here and after the Browns filed their complaint. The Browns argue that, because those new provisions took effect after August 2003 — the last time Mortensen is alleged to have furnished information to consumer reporting agencies — the FCRA as amended by the FACTA does not apply. Regardless of the provisions added by the FACTA, however, the Browns ignore the fact that section 1681t(b)(1)(F) was in effect at all relevant times and governs here. The Browns' argument with respect to the FACTA is irrelevant.
4. Other Federal Laws*
 Mortensen also argues the Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.), and the Health Insurance Portability and Accountability Act of 1996 bar the Browns' third and fourth causes of action. Because we conclude the FCRA preempts the third and fourth causes of action, however, we need not address Mortensen's remaining arguments. *Page 799 
 DISPOSITION
The order dismissing the Browns' third and fourth causes of action with prejudice is affirmed.
Mallano, P. J., and Rothschild, J., concurred.
[1] The complaint also claims to be on behalf of all others similarly situated. We do not address or otherwise mention any potential class in this opinion, as no class has been certified and no such issues are before us.
* See footnote, ante, page 789.
[2] We do not address the remaining causes of action because they have been dismissed and are not before us. We note, however, that it is clear the fifth cause of action is the Browns' "alternative" claim, alleging violations of the FDCPA.
[3] Section 1681t(b)(1)(F) also lists two exceptions to the exception, which are not relevant here. Similarly,15 United States Code section 1681h(e) (section 1681h(e)) states the FCRA does not preempt state common law claims for defamation, invasion of privacy, or negligence with respect to the reporting of information when the plaintiff alleges malice or willful intent to injure. That section does not apply here, however, as the Browns' claims are all statutory.
[4] In addressing the scope of FCRA preemption, many courts have wrestled with the apparent tension between section 1681t(b)(1)(F) — which expressly preempts claims relating to the responsibilities of furnishers of information to credit reporting agencies — and section 1681h(e) — which permits state common law claims against those who furnish false information to credit reporting agencies with malice or willful intent to injure. (See Gorman v. Wolpoff Abramson,LLP (9th Cir. 2009) 584 F.3d 1147, 1166 [noting that "[a]ttempting to reconcile the two sections has left district courts in disarray"]) We need not tackle any such tension, however, as the Browns' claims are based on statute, not common law.
* See footnote, ante, page 789. *Page 800